# Stewart *v.* The State.

*Indictment for Murder.*

1. *Evidence of former difficulty.*—The prosecution having proved the fact of a previous difficulty between the defendant and a kinsman of the deceased, on the morning of the homicide, the defendant can not be permitted to prove the details of that difficulty, nor to show who was the aggressor.

2. *Exculpatory declarations of defendant, as to peaceable intentions.* The defendant's own declarations, made a year or more before the homicide, as to his peaceable intentions for the future, are not competent evidence for him for any purpose.

3. *Declarations of deceased inculpating himself.*—The declarations or admissions of the deceased, as to his being in fault in striking the defendant, made about one hour after the difficulty, are too remote to constitute any part of the *res gestæ ;* and not being made under circumstances which would render them admissible as dying declarations, they are not competent evidence for any purpose.

4. *Statements of defendant as witness.*—The defendant, testifying as a witness for himself, can not be permitted to state his motive, intention, or mental *status ;* as, that he "was in a fright," when he crossed the street just before the difficulty ; or, that he "did not come to town that morning with any purpose to engage in a difficulty, or to get into trouble with any of the W.'s," the family of the deceased ; the general rule applying, which forbids a witness to state his motive, belief, intention, or state of mind, when secret and uncommunicated.

5. *Reading extracts from adjudged cases to jury.*—Counsel may read to the jury, in the presence of the court, as part of their argument, extracts from the published decisions of this court, when pertinent to the questions involved in the case, and containing correct expositions of the law.

[Stewart v. The State.]

6. *Homicide provoked by blow.*—A blow in the face with the hand, intentionally inflicted by the deceased on the defendant, may constitute provocation sufficient to reduce the killing from murder to manslaughter, even if perpetrated with a deadly weapon; provided the jury are satisfied, from a consideration of all the facts and circumstances, that the killing was prompted by the sudden heat of passion excited by the blow, and was not the offspring of malice, express or implied, or of a design previously formed; but, if the defendant induced and sought for the provocation, in order to afford him an opportunity to execute his malice or previously formed design, the provocation is no defense, and he is guilty of murder.

FROM the Circuit Court of Blount.

Tried before the Hon. JAMES AIKEN.

The defendant in this case, William L. Stewart, was indicted for the murder of William W. Whorton, by stabbing or cutting him with a knife. A trial was had on issue joined on the plea of not guilty, which resulted in a verdict finding the defendant guilty of murder in the second degree, and sentencing him to confinement in the penitentiary for the term of fifteen years. The killing occurred on the streets in the town of Summit, on the morning of Christmas, 1884, the deceased dying on the Monday following. The State proved on the trial, as the bill of exceptions states, "that the defendant had a difficulty, an hour or more before the difficulty with the deceased, with one John P. Whorton, who was a nephew of the deceased; that this difficulty occurred in the store of Trice & Noble, the deceased then being at his dwelling about two hundred yards distant; that the deceased afterwards came down from his dwelling, cursing and swearing, talking loud and angrily in the hearing of the defendant, who remained in the store, and said nothing; that the deceased then turned and walked back towards his own store, when defendant came out of the store of Trice & Noble, and started across the street in the direction of Williams' store on the other side of the street; that the deceased discovered him, and turned back, and they advanced towards each other; that some words then passed between them, which were stated in different language by the several witnesses, when the deceased struck the defendant in the mouth with his fist, causing the blood to flow, and the defendant immediately stabbed him with a pocket-knife which he held in his hand." The evidence for the State tended to show that the defendant had the open knife in his hand when he came out of the store, "with the blade under his coat-sleeve, and the handle covered by his hand;" while the defendant's evidence tended to show "that he did not have his knife open and concealed, as testified by some of the State witnesses, but jerked it out of his pocket as the deceased advanced towards him." It was proved that the deceased was a large and pow-

[Stewart v. The State.]

erful man, weighing over 220 ℔s., while the defendant weighed about 145 ℔s.; that the deceased was overbearing when drinking, and that he was drinking that morning.

The defendant proposed to prove that, as he rode into town that morning, John P. Whorton saw him coming, used abusive words about him, and declared his intention to whip him; and that afterwards, when he had entered the store of Trice & Noble, said John P. Whorton "made a murderous and wholly unprovoked attack upon him with a billet of wood." The court excluded each part of this evidence, on objection by the State, and the defendant excepted. The State introduced evidence of threats made by the defendant, "in the last two or three years, and within three or four months of the killing, at divers times, and to divers persons, declaring his intention to kill the deceased;" and the defendant adduced evidence showing that he was drunk when he made these threats, and that he had never attempted to carry them into execution, though having frequent opportunities. In this connection, the defendant offered to prove declarations made by him to two different persons, in November and December, 1884, to the effect "that he had had a great deal of trouble in law, and intended to keep out of difficulties for the future, if he could avoid them," and particularly to avoid any difficulty with the deceased. The court excluded this evidence, on objection by the State, and the defendant excepted. The defendant offered to prove, also, "that the deceased, within less than one hour after he was stabbed, said that he had struck the defendant in the mouth, that he was in fault, and that he did not want the defendant prosecuted." The court excluded this evidence, on objection by the State, and the defendant excepted. The defendant, testifying as a witness for himself, "stated that when he came out of the store of Trice & Noble, and started across the street, he was in a fright;" also, "that he did not come to town in the morning of the difficulty with any purpose to engage in any difficulty, or to get into trouble with any of the Whortons." On objection by the State, the court excluded each of these statements as evidence, and the defendant excepted.

The court permitted the solicitor to read to the jury, "in the hearing of the court, as part of his remarks and argument," an extract from the published opinion of this court in the case of *Mitchell v. The State*, 60 Ala. 28, being a part of the first paragraph, and commencing with these words: "We can not here declare or define all the acts and the protean forms of human conduct which evidence this formed design," &c. The defendant excepted to the action of the court in permitting this to be done.

[Stewart v. The State.]

The defendant requested several charges to the jury, which the court refused to give, and among them the following: "(5.) Malice aforethought implies a mind under the sway of reascn. Passion and malice are not consistent motive powers. If, therefore, the jury believe from the evidence that the defendant stabbed the deceased, not from malice, but from sudden passion aroused by a blow given him in the face or mouth by the deceased, then the defendant would not be guilty of murder in either degree." To the refusal of this charge the defendant excepted.

HEWITT, WALKER & PORTER, for the appellant.

THOS. N. McCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—1. The Circuit Court properly excluded the evidence relating to the detailed circumstances of the alleged difficulty between the defendant and J. P. Whorton, who was a kinsman of the deceased, which occurred on the morning of the killing. The State had proved the fact of this difficulty, to show malice. It was irrelevant to prove the details of it, or to show who was the aggressor.—*McAnally v. State*, 74 Ala. 9; *Garrett v. State*, 76 Ala. 18.

2. The declarations made by the defendant, a year or more previous to the killing, as to his peaceable intentions for the future, and his indisposition to engage in difficulties, were mere hearsay evidence, and were therefore inadmissible. *Martin v. State*, 77 Ala. 1.

3. Nor do we see any error in excluding what the deceased said about one hour after the difficulty, as to his being in fault in the matter of striking the defendant. This is too remote to be any part of the *res gestæ*, nor is it shown to have been a dying declaration. Neither the State nor the defendant, in a criminal prosecution, can be prejudiced by such *ex-parte* statements of the deceased, or of a prosecutor.—*Sylvester v. State*, 71 Ala. 17, 24.

4. It was not competent for the defendant to testify as to his mental *status* just prior to the difficulty, alleging that he was "in a fright." It is well settled in this State, whatever the rule may be elsewhere, that witnesses are not permitted to testify to their motive, belief, intention, or state of mind, when secret and uncommunicated. Such mental *status*, when relevant, is a matter of inference to be determined by the jury from the facts in evidence, both in civil and criminal cases. *McCormick v. Joseph*, 77 Ala. 236; *Burke v. State*, 71 Ala. 383. The same principle would exclude the defendant's denial of any purpose to engage in a difficulty with the Whortons,

when he went to Summit the morning of the day when the killing occurred.

5. We can perceive no valid objection to the practice of the Circuit Court, indulged in this case, of permitting counsel to read to the jury, in the hearing of the court, and as a part of their argument, extracts from the decisions of this court, which are pertinent to the questions of law and fact involved in the case on trial, and are correct expositions of the law. It would certainly be proper for the court to allow any principle of law to be read by counsel to a jury, which the court itself could give in charge to them without legal objection. The rule might be stated in even stronger terms, but the necessities of the case do not require it.

There is nothing in the other objections to the rulings of the court on the evidence. We discover no error in any of them.

6. There can be no doubt of the fact, that a blow in the face with the hand, intentionally inflicted by one person on another, may constitute a provocation adequate to reduce a homicide from murder to manslaughter, even when such killing is perpetrated with a deadly weapon. This, however, necessarily depends upon the varying circumstances of each particular case. If the killing is prompted by the sudden heat of passion, excited by the provocation, being immediately perpetrated on its occurrence, and is not the offspring of malice, express or implied, or of a previously formed design—a term which embraces the idea of deliberative malice—the crime may be manslaughter, but can not be murder, in either the first or second degree. And, on the contrary, if the killing is done from malice, or is executed pursuant to a previously formed design, which necessarily implies malice, it can not be imputed to spring from that sudden heat of passion, which dethrones, or obtains a mastery over the reason ; and if unlawful, it will, under these circumstances, be murder. A provocation will avail nothing, however, if it is sought for and induced by the act of the defendant, in order to afford him an opportunity to execute his malice. In such a case, he acts from malice, whatever may be the extent of his passion at the moment of the killing.

Under these views, the fifth charge requested by the defendant should have been given, and was improperly refused by the Circuit Court. Taken in connection with the evidence, it announced a correct proposition of law, and was not misleading. The other rulings we need not consider, except to make the following observations, which will be a sufficient guide, in connection with what we have said above, upon another trial.

[Ward v. The State.]

Whether the defendant acted from the one or the other of these motive powers—from the sudden heat of passion, or from malice or formed design—is a question purely of fact for the jury. They should consider, on the one hand, the nature of the provocation, with its tendency to negative premeditation and malice; the apparent suddenness of the affray, and the other circumstances which tend to show that passion may for the moment have obtained the mastery over reason in the defendant's mind. On the other hand, they should consider the evidence tending to prove the existence of an old grudge between the combatants, the nature of the weapon used in the killing, and its alleged previous concealment by the defendant before entering upon the fight, if they believe this to be true, with all the other facts which tend to show that, in perpetrating the killing, the defendant acted from malice or formed design, and not from the sudden heat of passion excited by the blow received by him from the hand of the deceased.

If the jury entertain a reasonable doubt as to whether the defendant acted from the one or the other of these motive powers, they should give the benefit of such doubt to the defendant, so as to reduce the crime to the mitigated or lesser grade.

The judgment is reversed, and the cause remanded. In the meanwhile, let the prisoner be retained in custody, until discharged by due process of law.