## Seams *v.* The State.

### Indictment for Murder.

1. *Change of venue, as matter of right.*—The right to a change of venue in a criminal case, when the defendant can not have a fair and impar-tial trial in the county in which the indictment was found, is given by statute, and its refusal is made revisable by this court. In passing on the application, the trial court should be governed more by the facts of the case, as admitted or proved, than by the mere opinions of witnesses. On the undisputed facts shown by the record in this case, the applica-tion ought to have been granted.

2. *Acts admissible as part of res gestæ.*—The deceased, a deputy sher-iff, having been killed by the defendant, whom he was attempting to arrest, a person who accompanied the officer may testify that the de-fendant, immediately after shooting the deceased, attempted to shoot him also, and knocked him down with his gun; these acts constituting a part of the *res gestæ.*

3. *Testimony of witness (or party) as to intention.*—The defendant tes-tifying for himself under an indictment for murder, can not be allowed to state "why he shot the deceased."

4. *Homicide of officer making arrest.*—The killing of an officer, in or-der to escape a lawful arrest, is without excuse or palliation.

5. *Charges as to degree of offense.*—It is for the jury to say, in a case of homicide, whether the defendant is guilty of murder in the first de-gree, or some lower grade of homicide; and a charge requested in this case, which instructs them that, "if they believe the evidence, they should not convict him of murder in the first degree," is properly re-fused.

APPEAL from Tuscaloosa Circuit Court.

Tried before Hon. S. H. SPROTT.

The appellant was tried and convicted of the crime of murder in the first degree, and sentenced to be hanged· There was an application made to the trial court for a change of venue, which was refused by the court, and the defendant excepted to such refusal. The facts, affidavits and circum-stances accompanying such application for a change of venue are fully set out in the opinion of the court.

The State introduced the witness Arthur Carpenter, who went with deceased to assist in the arrest of defendant, and proved by him the circumstances of the killing;—that while the deceased, James M. Awtrey, who was the deputy sheriff for the county of Tuscaloosa, was trying to arrest the de-fendant, but without any force, and at the house of defend-ant, the defendant shot him with a gun, which wound caused

his death—the witness testified that "immediately after the shooting of the deceased, the defendant turned upon the witness and snapped the other barrel of his gun at him; that it failed to fire, and the defendant then clubbed the gun and knocked witness down, and broke the gun with the blow; that the defendant took the barrel of the gun and aimed another blow at the witness;" but was prevented from striking him. The defendant objected to the introduction of that part of the testimony of the witness Carpenter, which referred to the defendant trying to shoot, and striking and trying to strike the witness; but the court overruled the defendant's objection. Among other things the court charged the jury: "That murder in the first degree is the wilful, deliberate, malicious and premeditated killing of a human being; all these qualities must co-exist to make the killing murder in the first degree. The law has declared no length of time these wicked elements shall be shown to have existed, and they may all be grouped under the phrase "formed design," and if the jury believe from the evidence, that this "formed design," as above explained, existed in the mind of the defendant for but one moment before the homicide, that, in law, would be sufficient." To the giving of this part of the charge the defendant excepted. The defendant then asked the following charges: "That Awtrey, under the evidence under which you must try the defendant, had no right to go to the defendant's house and take hold of the defendant and tell him that he had come for him, or that he arrested him, and if the evidence convinces you that he did so, he committed an assault and battery on the defendant, that defendant had a right to defend his person and to repulse an assault with force sufficient for his own protection, that he was not compelled to retreat from his own house, and that he had the right to shoot if the surroundings reasonably indicated that his life was in present danger in his own house, without fault on his part." "If the jury believe the evidence, they should not convict the defendant of murder in the first degree." The court refused to give each of these charges, and the defendant separately excepted to the court's refusal.

W. C. FITTS, and S. A. M. WOOD, for appellant.—The right to a change of *venue* is a constitutional right guaranteed to the defendant.—Const. Ala. Art. IV., § 36. The refusal of an application for a change of *venue* may after final judgment be reviewed and revised on appeal to the Supreme

[Seams v. The State.]

Court.—Code of 1886, § 4485. (The facts on which the application for change of *venue* is based are set out in the brief and reasons for granting the same argued at length, citing *Ex parte Banks*, 28 Ala. 28; 1 Bish. Cr. Pro., § 71; *Posey's Case*, 73 Ala. 494.) 2. The question propounded to defendant, "Why did you shoot Mr. Awtrey?" should have been allowed. Its object was to get before the jury the effect of deceased's manner and words on the passions of the defendant. 3. The charge given by the court was erroneous. The court should have given charges requested by defendant.

THOS. N. McCLELLAN, Attorney General, *contra*.—The affidavits of over sixty citizens that defendant could have a fair trial in Tuscaloosa county show the correctness of the court's ruling on the application for a change of *venue*. 2. The evidence of the witness Carpenter tended to show the *animus* of the defendant and was part of the *res gestae*. *Armour v. State*, 63 Ala. 173. 3. The question to the defendant ''Why did you shoot Mr. Awtrey," was obviously improper.—*Sherwood v. State*, 78 Ala. 436. 4. The charge given by the court was substantially the charge held to be good in *Mitchell v. State*, 60 Ala. 28. 5. The first charge requested by defendant was not only a palpable mistatement of law, but was also abstract. The second charge requested was not only bad but a trifling with the court.

SOMERVILLE, J.—The defendant was tried and convicted of the crime of murder in the first degree, for the killing of one James M. Awtrey, and was sentenced to be hung, in accordance with the verdict of the jury found in the case.

An application was made to the trial court for a change of venue, which, after consideration, was refused, and formally overruled. This application conforms to the statute by setting forth specifically and under oath, the reason why the defendant could not have a fair and impartial trial in the county of Tuscaloosa, where the indictment was found, and, was supported, in its averment of facts, by the affidavits of several disinterested witnesses. Counter affidavits were offered, as made by a large number of citizens, who, without denying the facts stated in the application, gave their opinion that the accused could have "as fair and impartial

[Seams v. The State.]

trial in Tuscaloosa county, as he could in any other county in the State."

The statute provides that the refusal of such an application, after final judgment rendered by the trial court, may be reviewed and revised by this court, on appeal.—Code, 1886, § 4485.

The principles upon which the appellate court is to act, in a case of this character, like those which should guide the trial court, are very simple. As said in *Posey v. State*, 73 Ala. 490, "If it be shown to the reasonable satisfaction of the court, that an impartial trial, and an unbiased verdict can not be reasonably expected, the venue ought to be changed." And in arriving at a conclusion on this subject the court is to be governed more by the *facts* of the case, as proved or admitted, and legitimate inferences from them, than by the mere *opinions* of witnesses, which are unsupported by facts.—*Johnson v. Com.*, 82 Ky. 116; 1 Bish. Cr. Pro. (3d. Ed.) § 71. To allow facts and necessary inferences flowing from them to be overturned by the mere opinions of witnesses, expressing their belief that the defendant could obtain a fair and impartial trial in the county where the indictment was found, as observed by Chief Justice PECK, in *Birdsong v. State*, 47 Ala. 68, would be "to make a precedent by which this great right and privilege of accused persons may be rendered almost worthless; for it will seldom happen that persons may not be found who will, and honestly, too, believe, whatever may be the excitement in any given case, that, notwithstanding, the party against whom it may exist, can have a fair and impartial trial."—5 Crim. Law Mag. (1884), 797. Such is the view of the matter which the law takes. It observes every precaution to cast the fullest protection around the sacred right of trial by jury, a privilege which Sir William Blackstone has emphasized by his familiar declaration that "the liberties of England could not but subsist so long as this palladium remains sacred and inviolate." The constitution of Alabama, like that probably of every other American State, following the rule of the common law as far back as it can be traced, not only guarantees the right of trial by jury, but, as if to guard against all possible misapprehension, guarantees such trial by "an *impartial* jury" of the county or district in which the offense was committed, and further declares that the right "shall remain inviolate." The statute law seals this by its promise of "a fair and impartial trial," and is jealous in its details

fully provided for securing this end.—Code, 1886, § 4485; § 4326 *et seq.* These provisions have in view not only the object of securing a just verdict but a just mode of procedure in obtaining it. There is probably no citizen who would not feel grievously wronged, and whose respect for the law would not be diminished, if a judge should sit in his own cause, and render judgment against him, however just the judgment might be; or should a merited fine be imposed upon him, even for an admitted violation of the law, by a jury composed of those related to the prosecutor by consanguinity or affinity within the prohibited degrees of relationship. A prejudice or bias created by other causes may be just as fatal to the attainment of justice. We repeat that the *trial* must be just, as well as the verdict reached through its appliances.

This can not be done as long as the minds of the jury are liable to be influenced by a prevailing public prejudice against the prisoner. When excitement runs high, and a public sentiment generally or widely prevails which would justify or tolerate a dealing with the prisoner by the culpable modes of mob violence, which is the enemy of all law and good government, it is difficult to keep the infection of such prejudice from finding its way into the jury box, however honest in purpose the jury may be, or however enlightened may be the community from which they come. The duress of public opinion is often insidious and potent, and the best of men sometimes become its victims without being aware of it, or without the courage to resist the dominion of its influence.

The evidence presented on the application for a change of venue in the present case has been carefully reviewed by each member of this court, in order that a just conclusion may be reached—one just alike to the State and to the defendant. Our unanimous conclusion is that petitioner's application should have been granted, and the Circuit Court erred in refusing it.

It is made to appear from the affidavits filed in behalf of the prisoner, and not denied by those filed on the part of the State, that the deceased was a respected officer of the law—being the jailer and deputy sheriff of the county—and was well and widely known, and popular in all parts of the county. The prisoner is a negro, apparently without influence or friends. The killing appears to have been attended with circumstances justly calculated to arouse popular indignation, and accordingly great excitement followed in the public

mind.   The accused fled from justice and was pursued and hunted for days by bodies of armed men, on horse-back and on foot, from different parts of the county.   The two newspapers, published in the city of Tuscaloosa, each gave a sensational account of the killing, denouncing the accused as the murderer of the deputy sheriff, Awtrey, otherwise commenting on the facts of the case disparagingly, and expressing opinions as to the certainty of his being hung.   Great excitement prevailed upon the occasion of his capture, and threats of lynching him were frequently heard. · Large crowds gathered from town and country, and the danger was so impending that the sheriff induced the Governor of the State to order out a military company for the protection of the prisoner from mob violence; and addresses were made to the populace by prominent citizens with the view of dissuading them from the execution of their threats, and for the preservation of law and order.   The gravity of the situation induced the mayor of the city to repair to the jail where the accused was thus protected, and to spend the night there, in order, as he himself says, "to keep back the mob in case any should come as threatened."   Upon the occasion of the preliminary trial before a justice of the peace, it was deemed necessary for the prisoner to be escorted to the court house under the protection of the military, and immediately after the trial that he should be removed to the jail of Jefferson county.   It is a fair inference from the surrounding circumstances, as detailed in the record before us, that the prisoner, without the presence of the military to protect him, would have been taken by force from the custody of the sheriff and lynched by an indignant and excited people.   This was in the early part of February, 1888.

The trial occurred in the middle of April following— about two months and a half after these occurrences.   It is asserted that after the removal of the prisoner a number of citizens expressed the opinion that if the venue was changed, or the case continued by the defendant he would be taken out of jail and lynched; and, this was said even in the presence of the justice who held the preliminary trial.   It is further stated, without denial, that some of the jurors regularly summoned in the cause had threatened to "put an end to shooting, and make short work of the murderer."   Under these circumstances, we repeat, that so far as we can judge from the facts before us, it is shown to our reasonable satisfaction that the excitement in the community was so great as

to justify the inference that the accused could not probably select a jury, in the mode provided by law, who would be so free from the prevailing public prejudice as to give him a fair and impartial trial, in the sense in which the law uses that term. The law is no respector of persons. It must and will protect the constitutional rights of the humblest and poorest citizen equally with those of the highest and noblest in the land. It accords a fair trial by a fair and unbiased jury to the most wicked violator of the law, whose feet have been swift to shed blood, equally with him who has justifiably stricken in the defense of himself, his family or his home. It is of small importance in this connection, that the execution of justice by a great State should be delayed for a season, compared with the danger of violating those sacred principles and safe-guards of liberty by which that justice is to be lawfully administered.

It may be but just to the presiding judge for us to remark that he no doubt acted upon the opinions of many reputable citizens, as expressed in the affidavits on file, who asserted their belief that the prisoner could get a fair trial in the county where the indictment was found. We have stated why this practice would be dangerous, and the reasons for declining to base our judgment upon such opinions, when they are not supported by facts.

For this error of the court, the judgment of conviction must be set aside and vacated, and the cause will be remanded that an order may be made removing the trial from Tuscaloosa county to the nearest county free from exception.

We discover no other error in the rulings of the court. The testimony of the witness Carpenter, which refers to the alleged attempt of the defendant to shoot him, and to strike him with his gun, immediately after the killing of Awtrey, was obviously a part of the *res gestæ* accompanying the act of homicide itself, and admissible to explain and throw light upon the *animus* of the perpetrator. The question propounded to the defendant, when he was introduced as a witness in his own behalf, asking him "*why* he shot Mr. Awtrey," was properly excluded. It calls for the secret and uncommunicated motive or intention of the witness, and not for facts from which such mental status could be lawfully inferred. This was not permissible.—*Stewart v. State*, 78 Ala. 436; *Ball v. Farley*, 81 Ala. 288.

The first charge requested by the defendant, to say nothing of the other defects in it, ignores the undisputed fact

that the deceased was an officer of the law, with the right to make arrests of persons under warrant, or other lawful process. If the accused shot and killed Awtrey in order to escape a lawful arrest by him, the killing would be without excuse or palliation.—*Floyd v. State*, 82 Ala. 16.

Whether the defendant was guilty of murder in the first degree, or of any lower grade of homicide, was a question for the determination of the jury. The second charge requested by the defendant erroneously sought to take this inquiry from the jury and relegate it to the court, and was for this reason properly refused.

The charge given by the court was free from error.—*Mitchell v. State*, 60 Ala. 26.

The judgment is reversed for the error of the court in refusing to grant the prisoner's application for a change of venue, and the cause is remanded. In the meanwhile the prisoner will be retained in custody, until discharged by due process of law.