# Davis *v.* The State.

### *Indictment for Murder.*

1. *Organization of jury; failure to find special jurors no ground to quash special venire.*—The fact that some of the jurors drawn on the special venire for the trial of a capital case were not found, constitutes no ground for the quashing of the special venire.

2. *Same; court not required to complete the special venire.*—Where some of the jurors drawn on the special venire for the trial of a criminal case have not been found and summoned, it is not error for the court to refuse the request of the defendant to have the special venire completed by supplying the places of the several jurors drawn and who were returned not found.

3. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, threats or statements in the nature of

[Davis v. The State.]

threats made by the defendant, preparation for the commis-
sion of the crime, conduct and action on the part of the de-
fendant at and near the time and place of the homicide, the
clothing worn by the defendant at the time of the homicide
with blood upon it, are all pertinent and relevant facts in the
trial and are admissible in evidence.

4.  *Same; admissibility of evidence as to tracks.*—In a trial under
an indictment for murder, where it is shown that the body
of the deceased was found at the head of a ditch, and the de-
fendant was seen by a witness to come out of the ditch, and
said witness testified that upon going to the ditch he found
tracks at the place where the defendant came out of the ditch,
and that these tracks were made by shoes like the ones worn
by the defendant on the day of the homicide, it is competent
for such witness to further testify that the tracks made at the
point referred to were the tracks of the defendant.

5.  *Same; facts of the defendant and the deceased being husband
and wife immaterial.*—On a trial under an indictment for
murder, where it is shown that the defendant and the woman
whom he murdered lived together in the same house, the fact
as to whether they were living together in adultery or as hus-
band and wife is immaterial to any issue involved and can in
no way affect the degree of the crime or the defendant's guilt
or innocence; and, therefore, charges referring to the exist-
ence of such relations are properly refused.

6.  *Same; charge as to motive.*—On a trial under an indictment for
murder, in order to justify the conviction of the defendant,
it is not necessary that the State should prove a motive for the
homicide; and a charge which instructs the jury that it is
necessary for the State to prove a motive for the homicide
before the defendant can be found guilty, is erroneous and
properly refused.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

The appellant, David Davis, was indicted and tried
for the murder of Bama Williams, was convicted of mur-
der in the first degree and sentenced to be hanged. When
the case was called for trial, the defendant made a mo-
tion to quash the venire upon the ground that twenty-
one of the jurors specially drawn for the case had not
been summoned. It was shown that these jurors were
not found by the sheriff. This motion was overruled
and the defendant duly excepted. The defendant moved

the court to supply, in manner and form prescribed by law, jurors in place of those who were drawn as special jurors in the case and not summoned. The court overruled this motion and the defendant duly excepted.

Upon the trial of the case one Jim Nash, a witness for the State, testified that he knew David Davis and Bama Williams; that Bama Williams had been killed by having her throat cut; that on the day she was killed the defendant came to the house where he was with one Cambee Reynolds, and called Cambee Reynolds to the door of the house where she and the defendant had a conversation which was overheard by him; that in this conversation the defendant told Cambee that Bama Williams and one Gus Lee had an engagement to meet in an old house and that he was going to kill Bama that day, and asked Cambee to get him some shells; that after hunting for the shells in the house Cambee was unable to find them, and that the defendant then walked away with the statement that "Bama has to die this day."

It was shown that the defendant and the deceased, Bama Williams, lived together in the same house, but that they had never been married; that there was no person occupying the house with them. This witness further testified that about 3 o'clock in the afternoon, after Bama Williams had been killed he went to the house of the father of the defendant where the defendant was, and upon his, the witness, saying in a loud voice as he walked up to the house, "Bama has been murdered," the defendant went out of the house. The solicitor asked the witness if the defendant did not run out of the house when witness answered that he did run out of the house, and had never been seen there since.

The body of Bama Williams was found at the head of a ditch in a plum thicket, with her throat cut from ear to ear and her head nearly severed from her body.

Jim Nash as a witness for the State further testified that he went down to the ditch where Bama Williams' body was, and that in going there he came upon the tracks of two people, which tracks led up to the dead body; that the tracks made by one of the persons was

made by shoes that were without heels or soles, that these tracks left the body and went down the ditch again. This witness further testified that he noticed the shoes worn by David Davis, the defendant that day, and noticed that they were without heels or soles, and that the tracks he saw near the body of the deceased were made by shoes about the same size as David Davis. After this witness had testified about David Davis and Bama Williams having lived together for more than a year, the solicitor asked him whether the defendant and Bama Williams were married. The witness answered "No, they were not married." Thereupon the defendant moved to exclude this testimony upon the ground that it was a conclusion of the witness. The court overruled the objection and the defendant excepted.

Andrew Lewis, a witness for the State, testified against the objection and exception of the defendant that the defendant told him before the homicide that he was going to kill Bama Williams. It was further shown by the evidence for the State that two nights before the killing of Bama Williams the defendant, upon finding Bama Williams and Gus Lee in a criminally intimate relation, shot Gus Lee in the shoulder.

Dick Stephens, a witness for the State, testified that on the day Bama Williams' body was found, he was working in his field, that the ditch in which the body was found was not far from where he was working; that he knew the defendant, and about half past one o'clock that day he saw the defendant coming out of the mouth of the ditch in which the body was found, and that he went in the direction of his father's house. That the defendant came down in the field where the witness was and he had on a mackintosh coat, that there were spots of blood on the front and arm of the coat and that there was a fresh scratch on the side of the defendant's face. This witness further testified that he saw tracks in the ditch where Bama Williams's body was found; that these tracks were made with shoes without soles or heels; that he traced the tracks down to a point where he saw the defendant leave the ditch. The solicitor then asked the witness who made the tracks he found at the point

where he saw the defendant leave the ditch. The defendant objected to this question because it called for a conclusion of the witness and duly excepted to the court's overruling his objection. The witness answered that David Davis, the defendant, made these tracks. There was other evidence introduced by the State tending to show that the defendant was guilty of the murder of Bama Williams.

The defendant, as a witness in his own behalf, testified that he did not kill Bama Williams.

Upon the introduction of all the evidence the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury are reasonably satisfied from the evidence that the defendant and Bama Williams lived actually together as husband and wife and so intended to live together, then they were husband and wife." (2.) "The State must show not only a motive for the killing but also circumstances showing beyond all reasonable doubt that the defendant is the guilty party." (3.) "If the jury are reasonably satisfied from the evidence that the defendant and Bama Williams lived actually together as husband and wife, then they were husband and wife."

C. P. McINTYRE and B. F. POWELL, for appellant, cited, *Ferry v. State,* 118 Ala. 79; *Livingston v. State,* 105 Ala. 127; *Nichols v. State,* 100 Ala. 23; *Farley v. Farley,* 94 Ala. 501; *Beggs v. State,* 55 Ala. 108.

CHAS. G. BROWN, Attorney-General, for the State. The court did not err in overruling the motion of defendant to quash the venire. It is presumed that the officer, sheriff, did his duty.—*Parson v. State,* 81 Ala. 577; *Webb v. State,* 100 Ala. 47.

The 2d charge refused is erroneous in this that it requires the State to prove a motive for the homicide. *Hornsby v. State,* 94 Ala. 55.

DOWDELL, J.—The sheriff's return on the *venire* showed twenty-one of the persons drawn as special

jurors to be *"not found."* There was no evidence of any failure on the part of the sheriff in the discharge of his duty to make diligent search for these persons. The presumption of the law, in the absence of any evidence to the contrary, is, that this officer discharged his duty in executing the writ for the *venire.* There was no error in overruling the defendant's motion to quash.—*Parson's Case*, 81 Ala. 577; *Webb's Case*, 100 Ala. 47.

There is no statute requiring or authorizing the court to complete the special *venire* by supplying the places of the special jurors drawn and who were returned "not found" by the sheriff before the *venire* was exhausted in making up the jury to try the case. The motion made by the defendant for this purpose was properly overruled.

Threats, or statements in the nature of threats, preparation for the commission of the crime, the conduct and actions of the defendant at and near the time and place of the homicide, the tracks near the dead body, the shoes of the defendant corresponding with the tracks, the clothing worn by the defendant about the time of the homicide, with indications of blood on it, are all pertinent and relevant facts in a trial for murder, and admissible in evidence. The evidence objected to by the defendant was in nature and character inculpatory, and the exceptions to the rulings of the court in its admission are wholly without merit.

There was no testimony even tending to show that defendant and deceased were husband and wife, but on the contrary all of the testimony, even that of the defendant himself, shows that they were not married, and that their connection and living together was adulterous. Moreover, whether the defendant and deceased were living together in adultery, or as husband and wife, could in no way affect the degree of the crime, under the evidence in the case.

There is nothing in the objection made to the testimony of the witness Stephens as to who made the tracks at the point in the ditch where witness saw the defendant come out of the ditch. It is certainly competent for a witness to testify to his knowledge of a material and

relevant fact.    There was but. one set of. tracks at the point named.    The witness having seen the defendant just a short time before the body of the deceased was discovered, at the point mentioned, this was sufficient upon which to predicate his knowledge as to who made the tracks, as much so as if he had been standing by the defendant and saw him impress his foot upon the earth. The evidence shows that there was no one else other than the defendant, who could have made the tracks at the point inquired about.

The first and third charges requested by the defendant, related to the relations which previously existed between defendant and deceased, as to whether they were married or not, and were properly refused by the court.

The second charge requested is palpably erroneous in that it requires the State to prove a motive for the homicide.—*Hornsby's Case*, 94 Ala. 55.

We find no error in the record and the judgment of the city court must be affirmed.