# Noel *v.* The State.

## *Murder.*

(Decided June 1, 1909.   49 South. 824.)

1. *Jury; Special Venire; Name on Both Regular and Special.*—
Where the name of a person appears on the special venire and also
upon the regular venire summoned for the week in which the case
had been set for trial, that constitutes grounds for quashing the
special venire.

2. *Same; Motion to Quash; Time.*—Where the motion to quash the
venire is made on the day set for the trial and before the defendant
has announced ready, it is made in time, the proceedings then being
in fieri and under the complete control of the court.

3. *Same; Waiver of Right to Object.*—Where the prisoner was ar-
raigned, had pleaded, and the special venire had been drawn, but be-
fore it had been served on accused, and while he was in court with
counsel, the solicitor moved to quash the venire drawn specially for
reasons that were sufficient, whereupon the court asked the defend-
ant if he had anything to say as to the motion, and his counsel re-
plied:  We know nothing, we say nothing, we consent to nothing, we
waive nothing, and we object to .everything.  Construing, the reply
as an objection to the allowance of the motion, the court overruled
the motion, giving as his reason that the defendant objected, and
giving the defendant to clearly understand that his rights were being
disposed of on that theory.  Held, the defendant was estopped by his
objection from subsequently moving to quash the venire on the
same grounds; no change in his situation having intervened to his
harm in the meantime.

4. *Same; Summoning; Mistake in Name.*—Where a juror was
drawn and summoned by initials only, a variation in the middle ini-
tial of a name did not constitute such a mistake in the name as re-
quired that such person be discarded and others summoned to sup-
ply his place.

5. *Same; Failure to Summon.*—The statute requiring certain
names to be discarded, and others summoned to take their place has
no application to the names of persons not summoned; and hence,
where the names of certain persons on the special venire were re-
turned as not found, and it appears that there were persons in the
precinct where the persons not found were designated as residing
with similar names though different in some respects to suggest
that they were the persons intended, it was not error to overrule
a motion to discard such name and   direct others to be summoned to
supply their places.

6. *Evidence; Diagram; Admissibility.*—Where a witness testified
that he had prepared the diagram and that it was substantially cor-
rect, although he had not attempted to make it show exact relative
distances, it being a diagram of the place where the body was found,

and its surrounding, such diagram was properly admitted in evidence, its infirmities being a question for the consideration of the jury.

7. *Same; Self Serving Declarations.*—An offer by accused to show by a witness that accused had told witness about threats made by decedent against him, was properly excluded as a self serving declaration, and as hearsay evidence.

8. *Same; Sound of Shots; Appearance of Pistol.*—It was competent to introduce testimony as to the sound of two shots heard by a witness, and the appearance of a shell taken from a pistol found near decedent's body, since such facts are within the range of ordinary knowledge, and require no special training or experience for their perfect comprehension.

9. *Same; Character.*—Character can be proven only by general reputation, and hence, where a witness testified that decedent was dangerous and bloodthirsty, and the state on cross examination had shown that the decedent had once attempted to arrest the witness, it was not competent for the defendant to show that on that occasion decedent had knocked witness on the head with a club.

10. *Same; Harsh Treatment of the Accused..*—Evidence of harsh treatment of accused, pending his confinement, and subsequent to the charge preferred against him, is not admissible in evidence for the accused on his trial.

11. *Appeal; Presumption; Regularity of Lower Court's Action.*— On appeal the presumption is indulged that the rulings of the lower court are proper, and error must be affirmatively shown.

12. *Witnesses; Examination.*—Where, on cross examination of a witness, the defendant had shown that a certain side of the street at the point where the killing occurred was not frequented by pedestrians, and the witness stated the names of several persons living in town whom he had never seen on that side of the street, it was competent for him to state on redirect, if he had ever seen a named person living in the town on that side of the street, since the inquiry followed a line opened up by the defendant and tended to show that that of the street was not much frequented, and was, therefore, a place which lent itself to a lying in wait, which was the theory of the state and supported by the tendencies of the evidence.

13. *Same; Cross Examination; Scope.*—Where the accused brought out a part of the conversation respecting trouble between him and the decedent, the state was entitled on cross examination to have the balance of the conversation that the whole might be rightly understood by the jury.

14. *Same.*—Where the defendant admitted the killing, but testified to facts tending to support a plea of self defense, and it appeared that on the night of the killing and while in the custody of officers, and when no occasion demanded of him a denial of guilt, defendant had denied any knowledge of the homicide, and it further appeared that at the time of the killing, the accused had issued from a vacant lot upon which were some trees, but on which side of the street there was no sidewalk, and it was not much used, it was within the sound discretion of the court to permit the state on cross examination to ask whether he had ever before told anyone how he came to be on the side of the street where decedent was killed. Such question was

not objectionable as directing the minds of the jury to the proposition that accused had failed to testify at some previous judicial investigation from which they might infer his .guilt.

15. *Same; Impeachment; Failure to Testify at Coroner's Inquest.*— Where there was no other evidence to show bias and no notice that there would be, it was not error to exclude evidence that a state's witness had not testified at the time of the inquest, although he had given damaging testimony against accused at the time of the trial.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

W. L. Noel was convicted of murder, and he appeals. Affirmed.

JOHN A. LUSK, and STREET & ISBELL, for appellant. The right to a special venire cannot be waived in any manner other than that provided by the statute.—Sec. 7264, Code 1907; *Bankhead v. The State,* 124 Ala. 14; The defendant need not have been in court when the special venire was drawn as that was not the time for him to complain at anything that might be done violating his rights in the premises.—*Hurd v. The State,* 116 440; *Washington v. The State,* 81 Ala. 35. Defendant could not waive his right to a full and complete jury in accordance with law and the order of the court except in the way provided by the statute.—*Bankhead v. The State, supra; Roberts v. The State,* 126 Ala. 74. The name of W. P. Roberts appearing on both the regular and special venire was grounds for quashing.—*Darby v. The State,* 92 Ala. 9; *McQueen v. The State,* 94 Ala. 50; *Caddell v. The State,* 129 Ala. 63. The defendant has a right to have the list before being called upon to quash or to consent thereto, or to waive it.—1 Bish. Crim. Proc. sec. 944. The motion to quash came in time.— *Peters v. The State,* 100 Ala. 10; *Howard v. The State,* 108 Ala. 571; *Porter v. The State,* 146 Ala. 36. Discrepancies appearing in the name of several of the jurors, the court should have discarded them and summoned

other jurors from the qualified citizens of the county.—
Sec. 7267, Code 1907; *Mertin v. The State,* 144 Ala. 8;
*Hammond v. The State,* 147 Ala. 79. These discrepancies constituted mistakes in names.—*Stewart v. The State,* 137 Ala. 33; *Martin v. The State, supra; Coleman v. The State,* 145 Ala. 13; *Cowley v. The State,* 133 Ala. 128; *Collins v. The State,* 137 Ala. 50. The question to the witness Bartlett as to his not testifying before the coroner's jury should have been permitted.—Moore on Facts, pp. 1196. Sparks was not an expert, and should not have been allowed to testify as to the shots, and the appearance of the shell. As the defendant was under no duty to tell anybody why he was on the east side of the street, the state should not have been permitted to ask him, if he ever told anybody.—3 Ency of Evi. 846; *Rogers v. The State,* 71 S. W. 18.

ALEXANDER M. GARBER, Attorney-General, and THOMAS W. MARTIN, Assistant Attorney-General, for the State.

SAYRE, J.—Some days after arraingment, plea, and special venire drawn, but before a copy of the venire had been served on him, the defendant being in court with his counsel, the solicitor moved the court to quash the special venire on the ground that the name of W. P. Jordan appeared on both the special venire and on the venire of regular jurors summoned for the week in which the case had been set for trial. The court took evidence which went to establish the fact alleged in the motion, and that there was only one W. P. Jordan in the county. Thereupon the court, calling upon the defendant to know what he had to saf to the motion, defendant, through counsel, replied: "We know nothing, we say nothing, we consent to nothing, we waive

[Noel v. The State.]

nothing, and we object to everything." The court overruled the motion to quash upon the stated ground that the defendant objected. On the day set for the trial, and before announcing his readiness to enter upon the trial, the defendant moved to quash the venire upon the identical ground on which the solicitor had put his previous motion, and none other. The court overruled the motion, and defendant excepted.

The venire was unquestionably subject to a motion to quash.—*Darby v. State,* 92 Ala. 9, 9 South. 429; *Roberts v. State,* 68 Ala. 515; *McQueen v. State,* 94 Ala. 50, 10 South. 433. It was in fact the duty of the court to avoid its issue and service upon the defendant. As was pointed out in *Wilkins v. State,* 112 Ala. 55, 21 South. 56, the proceedings were yet in fieri and under the complete control of the court, and it was the duty of the court to make a timely correction of errors which may have intervened, and which, if persisted in, would render them nugatory. It will be conceded that defendant's motion to quash, if unaffected by his previous objection to the solicitor's motion, was timely. But had he by his objection estopped himself to make the identical motion at a later time? Without venturing to catalogue those rights which may be waived, it is safe to assert that there are rights and privileges which may be waived, though secured to the accused by common law and Constitution.—*Martin v. State,* 62 Ala. 240. Thus, in the recent case of *Stone v. State,* 160 Ala. 94, 49 South. 823, the defendant, after a jury had been impaneled, sworn, and accepted by the state and the defendant, procured the court by motion to quash the venire for the fault which appears in the case at bar. Upon a venire de novo, there was a plea of former jeopardy. It was held, on the authority of *State v. McFarland,* 121 Ala. 45, 25 South. 625, and cases there cited, that the defendant had estopped himself to plead

[Noel v. The State.]

his former jeopardy. The case in hand was properly before the court for ruling on the motion to quash, and the defendant was properly in court. His language uncovered a purpose to object and at the same time reserve whatever advantage might grow out of a withholding of his objection. On the proof it was the duty of the court to quash the venire. The defendant could not equivocate with the court. Whatever other meaning his language was intended to convey, the court was permitted to infer that he did object to an allowance of the motion. The court having interpreted the defendant's language to mean an objection—as it did—and having given the defendant to understand clearly that his rights were being disposed of on that theory, the defendant could not at a later date, no change in his situation having intervened to his hurt in the meantime, be heard to invoke the action of the court to do the identical thing to which he had objected and on the identical ground urged in favor of the first motion. The defendant argues that he did not then know who would constitute the venire, and that he ought not to have been called upon to elect until he had an opportunity to judge between the respective advantages and disadvantages of the two courses open to him. But the motion asserted, and the proof established, the fact and the only fact upon which the defendant based his subsequent motion. There was no change in the situation. The court acted in accordance with the intention of the statute, and there was no error in its ruling.

While the jury was being drawn, the name "H. N. Oliver" was drawn from the box and called. One Oliver appeared and testified that his name was Henry Randolph Oliver. The juror also testified that there was no other Henry Oliver in the county, nor any H. N. Oliver, and that he signed his name H. R. Oliver. The defend-

ant objected to the juror on the ground that there was a mistake in the name. In *Kimbrell v. State,* 130 Ala. 40, 30 South. 454, and *Martin v. State,* 144 Ala. 8, 40 South. 275, it was held that, where a juror was summoned by initials only, a variation in the middle initial did not constitute a mistake in name within the meaning of the statute, which requires the names of such persons to be discarded and others forthwith summoned to supply their places. In the last named of these cases, however, the juror had been summoned by his first initial and middle name, and upon this fact it was distinguished from the rule said to apply in cases where initials only are used. Whatever may be said as to the soundness of the distinction thus taken, the statute has been re-enacted since the date of those decisions, and they must be accepted as the settled law of such cases.

Several persons whose names appeared on the special venire as jurors to be summoned were returned as not found. No bad faith or lack of diligence was charged against the sheriff, nor any motion made to quash the venire on either ground. It was shown to the court that there were persons, in the several precincts where the persons named in the venire were designated as residing, with names of such similarity, though different in some respects, as to suggest that they were the persons intended by the venire, and upon this basis the defendant put a motion in each case, as these names were drawn, that the court discard them and direct others to be summoned to supply their places. But these persons had not been summoned, and to them the statute had no application.—*Davis v. State,* 126 Ala. 44, 28 South. 617.

The diagram of the place in the town of Boaz where the body of the deceased was found, and its surroundings, was properly admitted in evidence, the witness who

had prepared it having testified to its substantial correctness, notwithstanding his statement on cross-examination that he had not attempted to make it show exact relative distances. It doubtless shed light upon the testimony of the witnesses, and its infirmities were matters for the consideration of the jury.—*Burton v. State,* 115 Ala. 1, 22 South. 585, s. c. 107 Ala. 108, 18 South. 284. Nor was there error in permitting other witnesses to refer to it.

The state's contention, supported in tendencies of the evidence, was that defendant had gone to the east side of the street and was there lying in wait for the deceased. On the defendant's cross-examination of the state's witness D. A. Morton, it was developed that the east side of the street at the point where the killing occurred was not much frequented by pedestrians, and apparently as if to sustain the statement, and presumably in response to questions put to him, the witness mentioned the names of several persons living in Boaz whom he had not seen on that side of the street. The state was permitted to ask the witness if he had ever seen G. M. E. Mann, who lived at Boaz, on that side of the street. In this there was no error calling for reversal. The question followed a line of inquiry which had been opened by the defendant, and the answer had some tendency—its weight being for the jury—towards showing that the east side of the street was not much frequented, and was for that reason a place which lent itself to a lying in wait.

The state's witness Bartlett had not testified at the coroner's inquest. To our mind there was nothing in the fact that he had not offered to testify at the inquest which would have afforded just inference that his disposition towards the defendant was unfriendly, or that the damaging evidence he gave at the trial in the court

below was concocted in the interval between the two trials. Standing alone, the fact that he had not offered to testify was indifferent. If, in connection with the fact that he had assisted financially in the employment of special counsel to prosecute, it tended to support defendant's argument as to the bias of the witness and his willingness to concoct testimony harmful to the defendant, it is sufficient to relieve the court below of error to observe that at the time of the exception reserved there was no evidence of the witness' activity against the defendant, nor was the court informed that there would be. There was no error here.

The witness Bartlett had testified to a threat made by defendant to take the life of deceased. He also testified that the defendant had requested the witness, who was mayor of the town of Boaz, not to send the deceased, who was marshal of the town, after him in the event deceased had made a case against him. As part of the conversation, defendant had made the threat. For the purpose of explaining why he did not desire to have deceased sent to arrest him (as appears in argument here), defendant offered to show by the witness that on a different occasion he (defendant) had told the witness about threats made by deceased. The proposed evidence was hearsay and self-serving, and there was no error in its exclusion.

The testimony of the witness Mann as to the sound of the two shots heard by him, and that of the witness Sparks in respect to the appearance of the shell taken from the pistol found near the body of deceased, was properly admitted. The statements of these witnesses, in the particulars objected to, were shorthand renderings of facts which could not well have been reduced to simpler elements. They were also facts well within the range of ordinary knowledge, and required no special

training or experience for their perfect comprehension.

So much of the testimony of the witness Amos as was objected to by the defendant was a part of a conversation on the same subject, the subject of the trouble between defendant and deceased, about which the defendant had interrogated the witness. The state was entitled to have the whole of it, in order that its true meaning and import might be rightly understood.—*Addison v. State,* 48 Ala. 478.

J. J. Pruett was called as a witness by the defendant, and testified to the character of the deceased as a dangerous and bloodthirsty man. On cross-examination, and for the evident purpose of showing bias, the state showed that the deceased had upon an occasion attempted to arrest the witness. Thereupon the defendant sought to draw from the witness the fact that on the occation of the attempted arrest the deceased had knocked the witness upon the head with a club. There was no error in the court's refusal to permit this. Character can only be proved by general reputation, and evidence of particular acts is inadmissible.—1 Mayf. Dig. p. 161, § 116.

The deceased had been slain on the east side of the main street of the town of Boaz, and between 9 and 10 o'clock of a dark night. The state had adduced evidence going to show that the defendant, at the time of the killing, had issued from a vacant lot upon which some trees grew. It was shown that there was no sidewalk upon that side of the street, but only a footpath, and that it was not much used by persons going along the street. Both defendant's place of business and his residence were upon the west side of the street. No doubt the theory of the state was that defendant had lain in wait for the deceased at this point, and this theory was supported by tendencies of the evidence. The defendant

explained his presence at the place by saying that he had been there to answer a call of nature and to get a drink out of a bottle which he had hidden there. He admitted the killing, but testified to a state of facts which tended to support the plea of self-defense. On the examination of the witness Bartlett it had been shown that the defendant, on the night of the killing, while in the custody of officers, but, so far as appears from the bill of exceptions, on no occasion demanding of him a denial of his guilt, had denied any knowledge of the homicide. In view of these tendencies of the evidence, and the contradictory statements made by the defendant, the court kept within the limits of that broad discretion which trial courts have in the control of cross-examinations when it allowed the state to ask the defendant whether he had ever before told any one how he came to be on the east side of the street. The defendant objected to the question, without assigning grounds. After objection overruled, the defendant answered that he had told no one except his attorneys, and then moved to exclude the answer, which motion the court overruled. The defendant now contends that this was the equivalent of allowing the state to prove the defendant's silence at a previous judicial investigation as a premise from which the jury might infer guilt. It is conceded as undoubted law that a defendant's silence on the occasion of a judicial investigation—that is to say, his failure to testify—cannot be taken as an implied admission of guilt; and this upon the constitutional principle that no one shall be compelled to give evidence against himself, a protection against inquisitorial judicial practice which would be seriously impaired if one's failure or refusal to testify could be proved as a circumstance against him.—*Davis v. State*, 131 Ala. 10, 31 South. 569, and authorities there cited. In the case at hand, however, it does not appear

that any constitutional right of the defendant was infringed upon. The defendant having, according to the theory and evidence of the state, voluntarily made a statement relative to his connection or lack of connection with the homicide, it was competent for the prosecution to show the inadequacy of that statement, that the defendant failed to explain a very damaging circumstance, the existence of which he afterwards admitted upon oath. The question asked and answered must be taken as having been asked for the purpose indicated. There was nothing in the form of the question, nor in the objection taken to it, nor in the use made of it, so far as the bill of exceptions shows, directing the mind of the jury to the proposition that defendant had failed to testify as a witness on the occasion of some previous judicial investigation. It requires a strained interpretation of the action of the court below to give it the meaning now contended for. Error must be affirmatively shown. —*Ryan v. State*, 100 Ala. 105, 14 South. 766; *McElhaney v. State*, 24 Ala. 71. Under the circumstances shown, we are of opinion that there was no error in the action of the trial court in the respect here complained of.

It is too obvious to need discussion that the circumstances of harsh treatment in the confinement of the defendant, subsequent to the charge preferred against him, could shed no light upon the question of his guilt or innocence, and ought not to have been admitted in evidence, as they were not.

We have examined seriatim, and perhaps at unnecessary length, the exceptions noted in the record, and find no error. Accordingly the judgment of the court below is affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.