68 So.2d 35

## HARDIE v. STATE.

### 6 Div. 441.

Supreme Court of Alabama.

Aug. 6, 1953.

Rehearing Denied Nov. 27, 1953.

McCoy Davidson and Edw. F. Morgan, Tuscaloosa, for appellant.

Si Garrett, Atty. Gen., and Wm. H. Sanders, Asst. Atty. Gen., for the State.

GOODWYN, Justice.

Appellant was convicted of murder in the first degree and sentenced to death by electrocution. His appeal here is under the provisions of the automatic appeal statute. Act No. 249, appvd. June 24, 1943, Gen. Acts 1943, p. 217, Code 1940, Tit. 15, § 382(1) et seq., Pocket Part.

The indictment charges that appellant "unlawfully, and with malice aforethought, killed John Foster King by shooting him with a shotgun." Appellant pleaded "not guilty" and "not guilty by reason of insanity."

The evidence clearly shows that appellant shot deceased with a shotgun, thereby causing his death. The theory of the defense is that the shooting resulted from a mistaken identity; that appellant thought the deceased was one of the parties who had threatened him earlier in the evening; that the shooting took place on appellant's home premises and, under the circumstances, was justified. The facts of the case, in substance, are as follows:

Appellant is a 53-year old Negro farmer who lived in a small cabin on the Montgomery highway, a short distance from Tuscaloosa, Alabama. He had been "keeping company" for about a year with a woman named Desiree Cook. There was testimony that they were planning to get married. In the early part of the night of the killing, Desiree came to appellant's house to get some whiskey. After obtaining it, she left, saying she had to catch a bus. Appellant followed her out to the road where she got in a car containing four Negro men. At appellant's request, she got out of the car and went back to the cabin with him. Two of the men from the car followed them. Appellant testified that he heard them curse him and say they were going to run him away from there and take the girl off. As they approached the house, appellant came out the rear door with his shotgun and fired one shot into the air. The two men then ran back to the car and drove away. About a half-hour later, the car returned and two of the men came up to the cabin. Appellant saw them coming and again went out the back door carrying his shotgun. One of the men knocked at the side door. As he stood there, appellant, from a place of concealment in a cotton patch to the rear of the cabin, fired twice, wounding the man with the second shot. The wounded man's three companions took

him to the hospital and while there met the deceased, a police officer of the City of Tuscaloosa. The deceased, accompanied by another police officer, went to appellant's cabin, together with the three men, to investigate the shooting. The deceased, riding in a city police car with a spotlight on the top, followed the car containing the three men. In the meantime, appellant returned to his cabin. He testified that he then decided to walk down the highway to a store to get some cigarettes; that on the way he saw three cars pass, and recognized one of them as the car which had been there earlier in the evening; that he then returned to his cabin, got his shotgun and some shells, and again went out to the field in the rear of the cabin. He testified that he did not want to be "hemmed in" in his cabin and went out in the rear in order to defend himself. According to the state's evidence, as the cars in which deceased and the three men were riding approached appellant's cabin, they met him walking along the highway towards town. After passing appellant, both cars turned around and proceeded back to where they had passed him. The car carrying the three men developed a flat tire and the occupants stopped to fix it. The police officers stopped their car at the place where they had passed appellant and shined their spotlight around the area, but were unable to locate him. The officers then went up to his cabin. Desiree had remained in the cabin during all of this time, and when the officers reached the cabin, she was asleep on the bed in the front room. The officers entered the cabin and awakened Desiree. They examined the two rooms of the cabin, and then deceased stepped out the side door. As he walked out the door and reached a point a few feet from the cabin, appellant, from a place of concealment behind a bush to the rear of the cabin, fired his shotgun and fatally wounded the deceased. After the shot, Desiree ran out and exclaimed, "Willie, you done shot the police." She then re-entered the house. The other officer, who had been in the kitchen, ran out the same door and was also shot by appellant with his shotgun. After this last shot, appellant left his shotgun in the woods and fled without returning to the cabin. He was apprehended about 17 miles away, near Moundville, Alabama. The evidence shows that the moon was shining and that it was a bright moonlit night. The deceased was not in uniform. The other officer accompanying him was wearing his police uniform.

Appellant admitted shooting somebody, but stated that when deceased came out of the cabin deceased was in a shadow and he could not tell who deceased was, or even whether he was white or colored. He further testified that he did not know deceased was a policeman, but that he had expected that the police would come sooner or later to investigate the earlier shooting.

The defendant was ably represented on the trial and on this appeal by two members of the Tuscaloosa Bar who were appointed by the court to defend him.

The principal questions argued by counsel for appellant are, generally stated, as follows: I. That the indictment alleges the killing of "John Foster King," whereas the deceased was referred to in the evidence as "J. Foster King," "Foster King" or as "Mr. King"; that this constitutes a material variance between the allegations of the indictment and the proof, thereby necessitating a reversal. II. That it was error to admit in evidence, over objection, a diagram of the scene of the killing which was drawn by one not an eyewitness to the killing. III. That it was error to admit in evidence, over objection, an alleged oral confession made by appellant, for the reason that it was not freely and voluntarily made. IV. That it was error to sustain the state's objections to questions directed to appellant on direct examination as to whether he was "excited," "frightened," or "nervous."

I. We do not think the variance with respect to the name of deceased is fatal. While it is generally held that a material variance between the allegations of an indictment and proof thereof is fatal, the rule with respect to a variance in the name of deceased has been stated in Jones v. State, 241 Ala. 337, 339, 2 So.2d 422, to be as follows:

"We may observe that a variance is not fatal, if the name of the deceased, or person injured, as indicated in an indictment and as shown by the evidence, is slight or immaterial *and such as to leave no doubt as to the identity of the deceased or. person injured named.*"

The rule is thus stated in McCoy v. State, 232 Ala. 104, 106, 166 So. 769, 770:

"True the name of the dead man must be correctly stated, and a material variance is fatal. But a mere inaccuracy, where the identity of the person named in the indictment with the one named in the evidence is established, is not fatal under the modern rule. 31 Corpus Juris, 847. The rule adopted in this state is that if the variance in the name be so slight as scarcely to be perceptible, and the deceased would have been readily known by the name thus called, then such variance is immaterial."

■ This question of variance is raised for the first time on this appeal. The identity of the deceased named in the indictment with the one named in the evidence seems to be clearly established. We do not see how the difference between the name of the person killed, as set out in the indictment, and as proved, can be said to have been misleading or injurious to appellant. During the trial there was no controversy as to identity, and no ruling was requested or made questioning the fact that the name of the deceased as proved was not the same person as named in the indictment.

While, undoubtedly, the safer practice would be to prove the name of deceased the same as his name is shown in the indictment, if such be the true fact, our view is that the failure to offer such proof in this case is not fatal.

■ II. There was no error in admitting the confession. The proper predicate was laid for its introduction. Even if there were error in admitting it, such error was cured by appellant's own admissions when he testified as a witness in his

own behalf. Dyer v. State, 241 Ala. 679, 683, 4 So.2d 311.

■■ III. We do not think error was committed in admitting in evidence the diagram of the scene of the killing. Although the draftsman was not an eyewitness to the shooting, the entries on the diagram were proved by witnesses as properly representing the true situation. Burton v. State, 115 Ala. 1, 9, 22 So. 585; Noel v. State, 161 Ala. 25, 31, 32, 49 So. 824. As stated in Jones v. State, 181 Ala. 63, 77, 61 So. 434, 439:

"The correctness of the diagram, as well as the accuracy of the testimony relative thereto, was a question for the jury, as was, also, the extent to which they were aided by said diagram."

In Burton v. State, supra [115 Ala. 1, 22 So. 588], it was said:

"How far the map or diagram was an accurate representation was matter for consideration of the jury, as was the credibility of the draftsman in support of its accuracy, as was also the extent to which they were aided by it in understanding the testimony having reference to the localities, distances, and all the various objects shown by it."

IV. On direct examination the defendant was asked whether, just before the killing, he was "excited," "frightened," or "nervous." The state's objections to these questions were sustained. The questions "Were your hands shaking?" and "Were you trembling?" were permitted, over the state's objections:

■ The rule in Alabama is that a witness may not testify as to his uncommunicated intent, purpose or motive. Presumably, it was this rule upon which the trial court relied in excluding questions regarding the witness' mental state, but allowing questions concerning visible physical manifestations of that mental state.

A direct precedent for the court's ruling regarding testimony about the witness' fright is Stewart v. State, 78 Ala. 436 (no error to exclude defendant's testimony that, just prior to the difficulty, he was "in a

fright"). Most of the cases which have cited and followed the Stewart case on this point involved testimony as to the witness' motive or intent, rather than his emotional state. Brown v. State, 79 Ala. 51, 53 (motive); Seams v. State, 84 Ala. 410, 416, 4 So. 521 (motive); Dent v. State, 105 Ala. 14, 17, 17 So. 94 (motive); Birmingham Bottling Co. v. Morris, 193 Ala. 627, 634, 69 So. 85 (malice); Patton v. State, 197 Ala. 180, 183, 72 So. 401 (motive).

On the other hand, more recent cases have permitted testimony similar to that here excluded. Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543, 546 ("I was scared", allowed); Jones v. Keith, 223 Ala. 36, 134 So. 630 (testimony that the witness was "excited," allowed); Moss v. State, 19 Ala.App. 85, 96 So. 451 (testimony by defendant that he was frightened, allowed).

■ Two of the more recent discussions of this point are found in McGuff v. State, 248 Ala. 259, 27 So.2d 241, and Ingram v. State, 252 Ala. 497, 42 So.2d 36, 38. In the McGuff case the court followed the prevailing Alabama rule and held inadmissible testimony as to the defendant's purpose or motive in proceeding to a certain place. In the Ingram case the court approved the admission of a witness' testimony as to his fear, for the reason that the emotion of fear is an "involuntary physical effect" and "for that reason it is different from the mere voluntary mental action of entertaining a motive or intention which was not communicated or otherwise expressed." On the basis of this distinction therefore, the excluded testimony was competent and should have been admitted, provided it was relevant and material. We have carefully considered this point and our view is that error to reverse was not committed in excluding such testimony. The purpose of such testimony could only be to show that defendant's mental state justified the shooting under either the plea of insanity or the theory of self-defense. It might have been material had other evidence been introduced to justify a consideration of either of these defenses. But there was no evidence in support of the insanity plea. Nor was there evidence tending to show that the killing was done in self-defense. In the first place, the defendant was not free from fault in bringing on the difficulty. Secondly, he was under a clear duty to retreat, for the uncontradicted evidence shows that the shooting was done by defendant from a place of concealment outside the curtilage of his home. According to his own testimony, he was in a field where he was "going to plant cotton."

■ We have carefully considered all of the testimony, even though no lawful objection or exception was made thereto, as is required of us, and we do not find any testimony that was seriously prejudicial to the rights of the appellant; nor can we say, upon consideration of all the testimony, that the verdict is so decidedly contrary to the great weight of the evidence as to be wrong and unjust, which would call for an order reversing the judgment and granting a new trial. Code 1940, Tit. 15, Sec. 382 (10), Pocket Part, Act No. 249, appvd. Jan. 24, 1943, Gen.Acts 1943, p. 219, Sec. 10, supra. It is our view that the verdict is amply supported by the evidence.

In all, appellant requested 36 written charges. Of these, 8 were refused. We have considered each of these refused charges and do not find any error in their refusal.

Counsel suggest other instances of error with the insistence that such instances, when considered in connection with the trial as a whole, show that appellant was denied a fair and impartial trial. We have given careful consideration to these suggestions of error, and cannot agree that appellant was denied a fair and impartial trial.

We find no reversible error in the record. Accordingly, the judgment is due to be, and is, affirmed.

Affirmed.

All the Justices concur.