A jury found appellant guilty on a trial on an indictment that alleged in pertinent part the following:
 "ROBERT LEWIS, . . . whose name is to the Grand Jury otherwise unknown, did in the course of committing a theft of NINETY-FOUR DOLLARS AND NO CENTS of the lawful currency of the United States of America . . . the property of Patricia Dill threaten the imminent use of force against the person of Patricia Dill with the intent to compel acquiescence to the taking of or escaping with the property, while the said ROBERT LEWIS, was armed with a deadly weapon or dangerous instrument, to-wit: a pistol in violation of Section 13A-8-41 of the Alabama Criminal Code."
At a sentencing hearing at which the State, after due notice to defendant, invoked the Habitual Felony Offenders Act, the court sentenced defendant to imprisonment for life without parole.
No question is raised on appeal as to the sufficiency of the evidence to sustain the verdict of the jury and the resultant judgment of conviction and sentence. The undisputed evidence consisted chiefly of the testimony of the alleged victim and Messrs. Johnny F. Canfield and Roderick Pearson, who said the defendant, with a pistol in his hand, ordered Ms. Dill, who was then employed at the Texaco Service Station at 5117 Tenth Avenue North, to let him have the money at the station, which she did, about the time she, Mr. Canfield and Mr. Pearson were ordered by the defendant to lie down on the floor. According to their testimony, the defendant left the station with the money of the station in a bag and was not apprehended at the station.
According to the undisputed evidence in the case, automatic photographing equipment was promptly activated that simultaneously alerted officers of the Birmingham Police Department, who promptly arrived at the scene. After considerable police investigation, defendant was arrested for the alleged crime about one month after its commission.
As no contention is made on appeal as to the sufficiency of the evidence to support the verdict, we deem that the foregoing summary of the facts suffices, except for references to some of the evidence pertinent to the issues raised upon appeal, which will be made in connection with our discussion of such issues.
Two of appellant's issues challenge the rulings of the trial court in overruling defendant's motion to suppress the identification of appellant by the named eyewitnesses "due to the suggestibility of their pretrial viewing of appellant." In one of the issues, the challenge is to the testimony of Miss Dill; in the other, testimony of the witnesses Canfield and Pearson is challenged.
The motion to suppress was heard prior to the commencement of the trial of the case. It was a lengthy hearing, covering about 100 transcript pages, in which Ms. Dill was intensively interrogated voir dire by defendant's attorney. The defendant's attorney emphasized circumstances indicating to some extent that the testimony of the three eyewitnesses as to the identity of the defendant as the person who committed the robbery had been tainted by suggestiveness in the exhibition to them of automatic photographs made of the scene at the Texaco Service Station at the time of the alleged robbery and unrelated photographs that had been taken of defendant and others. Defendant's attorney, with considerable ingenuity and astuteness, was able to show some apparent discrepancy between the in-court identification of defendant as the robber and views as previously expressed by the eyewitnesses in describing the robber, all of which became extremely bewildering and confusing, partly by reason of the fact that it appears that there had been another robbery of a Texaco Service Station a short time before the robbery in the instant case. It seems that Patricia Dill had at one time described clothing worn by the robber as "a tank top and blue jeans." According to some of the testimony, a "tank top" is a sleeveless and neckless shirt. There was some testimony on *Page 1187 
the hearing of the motion to suppress to the effect that the claimed "suggestiveness" to some of the eyewitnesses, if not all three, brought about an incorrect identification of the defendant as the robber instead of a particular individual, whose name was given and who may have been at the service station at the time of the robbery.
As to the claimed suggestiveness as to the alleged victim, defendant made a special point of the fact that her in-court identification was probably influenced by her seeing the defendant brought to court for the trial "in handcuffs." During a portion of the argument of counsel as to the motion to suppress, the court, in addressing defendant's counsel, said:
 "Steve, I appreciate your very fine examination of these different witnesses, police officers and the victim. And I can tell you have given a lot of consideration to this matter. And I will share with you the same consideration, it is true that the six photographs, I think it was No. 3 that she picked, as being the robber, don't exactly — they are not — the complexion is different, the facial hair is different, and so forth. What you mean by a slow or droopy eye — what was it?
 "MR. MAHON [Defendant's attorney]: One was a slow eye and one was a cock-eye.
"THE COURT: Cock eye? What you mean?
 "One of these looks like he is about to go to sleep. But you know that these police officers work with the best they can, what they have on file, what they have in their, what do you call them, the mug shot books, I guess? It is not perfect evidence and I find that this array of photographs does not unduly make your man stand out. They are all mug shots, every one of them has a City Jail number. They are all approximately the same age. You can't tell from the photographs how tall they are. There does not appear to be any great disparity in the weight of the individual.
 "It is unfortunate on the thing yesterday about the lady seeing the man in handcuffs. That is unfortunate. I wish that it had not happened. That is not good work. It is nobody's fault, because you know the case was set for trial yesterday and we continued it over.
 "But I am satisfied, based upon what I have heard this lady say, that her in-court identification today stems from the things that happened on that occasion in August when she was robbed.
 "I don't say that perhaps it is not suggestive in some form for her to have seen this man yesterday in handcuffs. But as you know, it is not just because a pretrial show-up might be suggestive, because it might be, is not automatically fatal to the incourt identification.
 "You asked that lady the question a dozen times and I asked her myself, Mr. Cahill [State's attorney] asked her, she probably thinks I am crazy, and I am satisfied that she identified this man because upon based upon what happened in August. And it is not tainted, not impermissible because of what might have happened yesterday."
We agree with the trial court that defendant presented some evidence on the hearing of the motion to suppress tending to show that there was some suggestiveness to Ms. Dill, Mr. Canfield and Mr. Pearson in what they had been told or had been shown between the time of the robbery and the time of their testimony on the trial but that such suggestiveness was not so potent as to render inadmissible their testimony identifying defendant as the robber. The trial court was not in error in overruling defendant's motion to suppress their testimony as to what they saw and heard as to the activity and words of the robber and as to his identity.
By another issue in appellant's brief, appellant urges that the trial court erred in failing to sustain defendant's objection to proffered evidence of State's Exhibit 2, for the reason, according to appellant, that "a proper predicate or a chain of custody was not shown." The ruling of the *Page 1188 
court that constitutes the basis of this issue was made during direct examination of Mr. Roderick Pearson, a witness called by the State. The following is a pertinent excerpt from the examination:
 "Q. I will show you what has been marked for identification as State's Exhibit No. 2 and I will ask you have you had occasion to have seen these before? What is depicted on here?
"A. Yes, sir.
"Q. When was the time that you saw this before?
"A. Moments —
"Q. Was it today?
"A. Today.
 "Q. Have you had an occasion to examine these photographs that appear on this roll?
"A. Yes.
 "Q. And I will ask you do you see anybody in these photographs that you know, recognize?
"A. Persons?
"Q. Yes. Do you see yourself in these photographs?
"A. Yes.
 "Q. And does this appear to be the store that you have just described to the jury?
"A. Yes, sir.
"Q. Where a robbery took place on the —
"MR. MAHON: I object to him leading the witness.
 "THE COURT: Watch your leading, please. But, overruled as to the question.
"MR. MAHON: We except.
 "Q. Does this appear to be where this event that you have previously described took place?
"A. Yes.
"Q. You didn't take these pictures?
"A. No.
 "Q. Are you familiar with the scenes that are depicted in these photographs?
"A. Yes.
 "Q. Do these photographs in your judgment truly and accurately depict the scenes that existed during the time of this robbery that you have testified to on the 22nd day of August, 1983?
"A. Yes, sir.
 "MR. CAHILL: Your Honor, we would offer this to the jury this time to allow Mr. Pearson to come down and explain. So, we would offer State's Exhibit No. 2 into evidence at this time.
 "MR. MAHON: If it please the Court, we do object. The proper predicate has not been met.
 "THE COURT: Well, I told you I would let you cross-examine the gentleman instead of taking him on voir dire. I will defer my ruling, Bob, until Steve has a chance to cross-examine him.
"MR. CAHILL: Okay."
Before the witness answered any further questions on direct examination, defendant's attorney was allowed to cross-examine the witness, which cross-examination is shown in the next four or five pages of the transcript. At the conclusion of such cross-examination, defendant's attorney made this statement:
 "If it please the Court, we object to the use of these photographs. This witness, Mr. Canfield [sic] I believe that the procedures used by the District Attorney in conducting, on the face of it, obviously an unfair identification process, under the circumstances; so tainted this witness' testimony as to make it inadmissible. We do object to the use of the photographs."
Thereupon, the following occurred:
"THE COURT: So noted and denied.
"MR. MAHON: We except."
In our opinion, the ruling of the trial court was not erroneous. We find the correct principles of law governing the question in Harrison v. Woodley Square Apartments,421 So.2d 101, 103-104 (Ala.), as follows:
 "Before photographs may be properly admitted, two general conditions must be satisfied. First, the picture must be properly verified and secondly, the photographs must tend to prove or disprove *Page 1189 
some relevant fact or must corroborate or disprove some other evidence offered or to be offered. McLemore v. Alabama Power Co., 285 Ala. 20, 228 So.2d 780 (1969), appeal after remand, 289 Ala. 643, 270 So.2d 657 (1972); Louisville N.R.R. Co. v. Hall, 91 Ala. 112, 8 So. 371 (1890) (photograph may be authenticated by witness other than photographer); Farris v. State, 57 Ala. App. 390, 328 So.2d 640
(Ala.Cr.App. 1976); Hardy v. State, 53 Ala. App. 75, 297 So.2d 399 (Ala.Cr.App. 1974); see C. Gamble, McElroy's Alabama Evidence, §§ 123.03 (1)(4) (3d ed. 1977). . . . Whether a photograph is admissible is left up to the sound discretion of the trial court and his decision will not be reversed except for a showing of abuse. [Authorities cited.]"
Appellant's final contention for a reversal is based upon the refusal by the trial court of defendant's requested written charge # 4, as follows:
 "A reasonable doubt is a fair doubt, based upon reason and common sense, and arising from a state of the evidence. While it is rarely possible to prove anything to an absolute certainty, suspicion or conjecture.
 "A reasonable doubt may arise not only from evidence produced, but also from a lack of evidence. The burden is upon the State to prove the defendant guilty beyond a reasonable doubt of every essential element of the crime charged. A defendant has the right to rely upon failure of the prosecution to establish such proof. A defendant may also rely upon evidence brought out on cross-examination."
The trial court dealt extensively in its oral charge to the jury with the requirement that the burden of proof was upon the state to prove by the evidence beyond a reasonable doubt that defendant was guilty. There is no contention that there is any inaccuracy in the court's oral charge. It contained, inter alia, the following:
 "It is true, as Mr. Mahon [Defendant's attorney] has accented, I think when the whole venire came in yesterday, Robert Lewis commences this litigation with an evidentiary fact in his favor, the presumption of innocence. It is a two-fold presumption, it is a legal concept and it is a fact in his favor, it is tangible evidence in his favor. He starts the litigation presumably not guilty. He is assumed to be innocent of any offense.
". . .
 "Now, the State has the burden of proof. Mr. Lewis has no burden of proof, he doesn't have to do anything. He doesn't have to present any witnesses or anything like that. It is the State's burden and the burden stays with the State throughout the course of the trial. A measure of proof that the prosecuting authorities have, ladies and gentlemen, in order to strip away that presumption of innocence or overthrow it or overcome it, is expressed by the term reasonable doubt or moral certainty standard.
". . .
 "In the alternative, if after a full and fair consideration of all of the evidence in the case or lack of evidence in the case, reasonable doubt could be derived from a lack of evidence as well as from the quality of evidence. But, in any event, if there does not remain in your collective minds an abiding conviction that he is guilty, then you must acquit him."
It is to be observed that the legal principles set forth in defendant's requested charge No. 4 were substantially covered in the court's oral charge. Therefore, the refusal of the charge does not constitute reversible error. To hold otherwise would collide with the following sentence of Code of Alabama 1975, § 12-16-13:
 "The refusal of a charge, though a correct statement of the law, shall not be cause for a reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of parties."
It should also be mentioned that defendant's charge No. 4 is not gramatically correct, in that it purports to be a sentence but does not constitute a completed *Page 1190 
thought or a completed step in a course of thinking, and for that reason it could have been correctly refused by the trial judge.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All Judges concur.