Jerome Lemon Spurgeon was indicted in a three-count indictment for manslaughter, in violation of § 13A-6-3(a)(1), Code of Alabama 1975; for vehicular homicide, in violation of §32-5A-192, Code of Alabama 1975; and for assault in the second degree, *Page 1118 
in violation of § 13A-6-21, Code of Alabama 1975. The vehicular homicide count was nol prossed and the jury found the appellant guilty of manslaughter and assault in the second degree as charged in the indictment. The appellant was sentenced to 45 years' imprisonment on the manslaughter conviction and to 15 years' imprisonment on the assault conviction, with these sentences to run consecutively.
At approximately 5:30 on the afternoon of April 26, 1988, Mary Louise Thomas was driving behind a black Cougar or Thunderbird on Interstate 759 in Etowah County, Alabama. Thomas followed this car for several miles and she noticed it weaving back and forth across the center line. Kay Brown was also driving behind this car on the day in question. As this car approached a narrow bridge, she saw the car cross the center line into the oncoming traffic's lane and then hit another car.
On the afternoon in question, Dawn Wagnon and Ladd Griffith were driving to the mall when a black car entered their lane of traffic and hit them. Griffith was driving the car and he was killed as a result of the injuries he sustained in the accident. Wagnon suffered a major concussion, lacerations, and a broken nose. She was hospitalized for two days after the accident and underwent surgery twice to repair her nose.
Lee Teague testified that the appellant came to his house about 2:00 p.m. on the day in question and they drank a couple of beers. They then went to a beer store and purchased a half case of beer and went to a friend's house in Boaz where they drank some more beers. After they left Boaz on their way back to Gadsden, the accident happened. The appellant was driving at the time. Teague hit his head on the windshield when the accident occurred. There were four beers left when the accident occurred.
Officer Vance Patton of the Gadsden Police Department investigated the car accident. When he arrived at the scene, he found that the vehicle, in which Griffith and Wagnon had been traveling, was along the roadway. He located the other vehicle down an embankment in a pond approximately 150 yards from the road. As he was walking toward this vehicle, he saw Teague and the appellant walking away from this car. The two were arguing about who was driving the car. Patton noticed Teague had a head injury and the windshield on the passenger side of the car in which he was riding was damaged. While Patton was talking to the appellant, he noticed a strong smell of alcohol coming from the appellant. The appellant's speech was slurred and his eyes were bloodshot. Patton testified that, in his opinion, the appellant was under the influence of alcohol at the time and had had too much to drink to safely operate a vehicle. Patton stated that his investigation indicated that the accident had occurred in Griffith's lane since that was where most of the debris from the accident was located.
The appellant gave a statement to the police. He claimed that Griffith's car was in his (the appellant's) lane of traffic when the accident happened. However, he admitted that he had consumed several beers and some whiskey on the day in question.
 I
The appellant contends his statement should have been suppressed because it was not voluntarily given. The following evidence was adduced at a hearing on the appellant's motion to suppress. Officer Duane Hopper of the Gadsden Police Department testified that the appellant was transported to the city jail shortly after the accident and he was then taken to the hospital for a blood test. At approximately 8:00 p.m., the appellant was returned to the city jail. At this time, Hopper read the appellant his Miranda rights and a waiver of those rights. The appellant indicated to Hopper that he understood his rights and that he wanted to make a statement. However, the appellant refused to sign the waiver.
Officer Jeffery Wright took the appellant's statement. As the appellant told Wright what happened, Wright typed the statement. Wright then read the statement to the appellant and he made any *Page 1119 
changes which the appellant wanted to make. The appellant then initialed all corrections. The appellant then read the statement and signed it. No threats, promises, hopes of reward or other inducements were made or offered to the appellant in return for his making the statement. The officers stated that, although it was clear that the appellant had been drinking, he clearly understood what was going on during the time he gave his statement.
The appellant testified at the hearing that he doesn't remember the police reading him his rights. He stated that the police kept telling him that he had killed a man. The appellant testified that he told the police that he did not want to make a statement but, when he overheard Lee Teague talking to the officers in another room, the appellant said, "I'll talk to you about what happened. My version of it." The appellant than gave a statement, read it, and signed it. The appellant admitted at the hearing that the substance of the statement in issue was "about correct."
The appellant contends that his statement was not voluntarily given because he did not understand the legal significance of giving this particular statement. He doesn't specifically remember receiving the Miranda warnings and he contends that he only gave a statement to rebut some of the statements he heard Lee Teague make in the next room.
 "The oft-stated rule is that a confession is prima facie involuntary and inadmissible, and the state must show voluntariness and a Miranda predicate in order for it to be admitted. [Citations omitted.] Whether there was a waiver of the right to remain silent and the right to counsel and whether it was knowingly, voluntarily, and intelligently made must be decided from the particular facts and circumstances of each case, including the background, experience, and conduct of accused — the totality of the circumstances. [Citations omitted.] The question of whether a confession was voluntary is initially to be determined by the trial court. [Citation omitted.] Thereafter, the voluntariness as affecting the credibility and weight to be given any statement that an accused has made is a determination for the jury. [Citation omitted.] The finding of the trial court will not be disturbed on appeal unless it appears contrary to the great weight of the evidence or is manifestly wrong. [Citations omitted.] Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. [Citations omitted.] The trial court need only be convinced from a preponderance of the evidence to find a confession to have been voluntarily made. [Citations omitted.]"
Bush v. State, 523 So.2d 538, 554 (Ala.Crim.App.), cert.denied, (Ala. 1988).
Our review of the totality of the circumstances convinces us that the trial judge's decision that the appellant's statement was freely and voluntarily given was not clearly erroneous. The trial judge properly admitted the statement into evidence.
 II
During the direct examination of Officer Patton, he testified that, in his opinion, the appellant was under the influence of alcohol when Patton saw him shortly after the accident occurred. The appellant contends this testimony was inadmissable. Although defense counsel's general objection at trial did not preserve this issue for our review, Johnson v.State, 526 So.2d 34 (Ala.Crim.App. 1987), it is clear that this testimony was admissible. See Patterson v. State,518 So.2d 809 (Ala.Crim.App. 1987), cert. denied, (Ala. 1988) (non-expert witness may testify as to the apparent intoxication of another at scene of automobile accident); Grimes v. State,488 So.2d 8 (Ala.Crim.App.), cert. denied, (Ala. 1986) (police officer may testify as to the sobriety vel non of an accused); Grimes v. State, 491 So.2d 1053 (Ala.Crim.App. 1986). Furthermore, another officer testified, without objection, to this very same matter. *Page 1120 
 III
The following occurred during the direct examination of Officer Patton:
 "Q. I'll ask you did you or Officer Veasey or any other officer in your presence ever direct Mr. Spurgeon to take any test to ascertain the level of alcohol?
"A. Not in my presence.
"MR. TEAGUE: I'll object to that, Your Honor.
"MR. PITTS: I think it's admissible, Your Honor.
"THE COURT: Overruled." (R. 177.)
The appellant contends that the reference to the blood test was prejudicial because no results of any blood test were ever admitted into evidence. This issue has not been preserved for our review since defense counsel's objection was not specific and it was made after the witness had already answered.Butler v. State, 531 So.2d 52 (Ala.Crim.App. 1988).
 IV
Defense counsel made several objections during the prosecutor's direct examination of Kay Brown. The following excerpts from the record are relevant to this issue.
 "Q. Okay. Now, is this from, say, out there at 1-59 to the point around the bridge, is it a two or four-lane highway?
"A. To the bridge it was four-lane.
 "MR. TEAGUE: I object. He's leading the witness, Your Honor.
"THE COURT: Overruled. It's one or the other.
". . . .
 "Q. From the point where you were at when the accident occurred did you, in fact, see the impact of the two vehicles?
"A. Yes, sir.
 "MR. TEAGUE: I'm going to object, Your Honor. This is leading, suggestive.
"THE COURT: Overruled. Ask your next question.
". . . .
 "Q. What, if anything, was there at that point that divided the two lanes of traffic?
"A. Something in between that divided the lanes?
"Q. Was there a median, chalk line?
"A. No. Just the double yellow line.
 "MR. TEAGUE: Object once again. He's leading his witness.
"THE COURT: Overruled." (R. 101-03).
On appeal, the appellant contends the prosecutor's questions to Brown were leading and should have been excluded. First of all, we must note that in all three instances, defense counsel did not object to the leading character of the prosecutor's questions until after the witness had already answered. Thus, the objections to these questions came too late. Sexton v.State, 529 So.2d 1041 (Ala.Crim.App.), cert. denied, (Ala. 1988).
Secondly, we do not perceive the above-quoted questions as leading questions. "[A] leading question is one which suggests the answer sought; such a question also has been described as one which assumes a material fact not therefore testified to."Bradford v. Stanley, 355 So.2d 328, 331 (Ala. 1978) (citation omitted). None of the prosecutor's questions seemed to suggest a particular answer, and thus, the questions cannot be characterized as leading questions. Furthermore, "[w]hether to allow or disallow a leading question is within the descretion of the trial court and except for a flagrant violation there will not be reversible error." Bradford, 355 So.2d at 331.
Defense counsel also objected to the following question asked of Lee Teague by the prosecutor.
 "Q. Was there anything other than the beer that y'all had to drink?
"MR. TEAGUE: Object. Leading.
"THE COURT: Overruled.
"A. Yeah. We had a drink of liquor." (R. 148.)
We also do not find that this question was leading since it does not suggest a particular answer. There is no merit to this issue. *Page 1121 
 V
The following occurred during the direct examination of Wagnon:
 "Q. From the point of your leaving your house out in Glencoe until you turned on that road to go to the Mall, do you recall ever — In what manner or what fashion did Mr. Griffith operate his car?
 "MR. TEAGUE: I'm going to object to that mental operation.
 "MR. PITTS: She's testifying as to what she observed.
"THE COURT: Overruled. You can answer.
 "A. He was operating under normal conditions. He was driving normally.
 "Q. Were you ever frightened or anything of that sort during that period of time?
"A. No, sir, I was not.
 "MR. TEAGUE: I'm going to object to that, Your Honor. That, too, is a mental operation.
 "THE COURT: Overruled. Ask your next question." (R. 115-16.)
The appellant contends the trial judge erred by overruling his objections. The trial judge properly overruled the appellant's first objection because a witness is competent to testify as to his or her observations if it is shown that the witness had an opportunity to observe the facts about which he or she testifies. Gladden v. State, 256 Ala. 368, 54 So.2d 610
(1951); Williams v. State, 375 So.2d 1257 (Ala.Crim.App.),cert. denied, 375 So.2d 1271 (Ala. 1979); Wert v. Geeslin,37 Ala. App. 351, 69 So.2d 718 (1953); C. Gamble, McElroy's AlabamaEvidence, § 105.01 (3d ed. 1977). Wagnon was a passenger in Griffith's car and she certainly had an opportunity to observe the way Griffith was driving on that day.
The trial judge also correctly overruled the appellant's second objection. A witness may testify to his or her own fear or lack thereof. Walker v. State, 260 Ala. 451, 71 So.2d 47
(1954); Hardie v. State, 260 Ala. 75, 68 So.2d 35 (1953);McElroy's at § 102.07(2).
 VI
The following occurred during the state's direct examination of Dr. Joseph Embry, the pathologist who performed the autopsy on Griffith.
 "Q. What history were you given with regards to his death?
 "A. The history I was given was that the evening before, around 5:30, as he was driving in Gadsden —
 "MR. TEAGUE: Your Honor, I'm going to object to this testimony. This is hearsay, what someone else told the doctor.
 "MR. PITTS: History as to his death is all I'm asking for.
 "THE COURT: Overruled. You can answer, sir. Go ahead.
"MR. TEAGUE: We except.
"THE COURT: So noted. Go ahead. You can answer.
 "A. Another vehicle crossed the median and struck his vehicle head-on.
 "Q. In any event, Doctor — We're not getting into the truthfulness of what you were told, but the history you were given was that he had died as a result of an automobile accident?
"A. Yes, sir." (R. 131-32.)
The appellant contends that Dr. Embry's above-quoted testimony was hearsay and should have been excluded. "Testimony which may be apparently illegal upon admission may be rendered prejudicially innocuous by subsequent or prior lawful testimony to the same effect or from which the same facts can be inferred." Thompson v. State, 527 So.2d 777, 780
(Ala.Crim.App. 1988) (citations omitted). The same facts testified to by Dr. Embry had already been legally admitted into evidence through the testimony of other witnesses. Thus, his testimony was merely cumulative. Any error which occurred here was harmless.
 VII
The appellant contends that the photographs taken at the scene of the accident should not have been admitted into evidence because the State failed to prove a proper chain of custody. In Lewis v. State, *Page 1122 465 So.2d 1185 (Ala.Crim.App. 1984), cert. denied, (Ala. 1985), defense counsel also objected to the admission of photographs on the grounds that the State did not prove a proper chain of custody. In that case, we stated:
 " 'Before photographs may be properly admitted, two general conditions must be satisfied. First, the picture must be properly verified and secondly, the photographs must tend to prove or disprove some relevant fact or must corroborate or disprove some other evidence offered or to be offered. [Citations omitted.] Whether a photograph is admissible is left up to the sound discretion of the trial court and his decision will not be reversed except for a showing of abuse.' "
Lewis, 465 So.2d at 1188-89, quoting Harrison v. State,421 So.2d 101, 103-04 (Ala. 1982).
In the case at bar, Officer James Michael Garigues testified that he took photographs of the scene of the accident shortly after the accident occurred. He stated that the photographs accurately depicted the scene at the time the photographs were taken. The photographs of the scene of the accident were certainly relevant in this case. Thus, the State laid the proper predicate for the admission of these photographs into evidence. There was no abuse of the trial judge's discretion here.
 VIII
The appellant challenged two jurors for cause. The trial judge denied these challenges. The appellant now contends that this was error.
The appellant challenged one juror for cause on the grounds that that the juror knew one of the victim's family. The other juror was challenged on the basis that her father had been killed in a car accident.
A party seeking to have a juror removed for cause must demonstrate that the juror's opinion is fixed to the extent that it would bias his verdict. Mahan v. State, 508 So.2d 1180
(Ala.Crim.App. 1986), cert. denied, (Ala. 1987). The voir dire examination of these jurors is not included in the record and there is no indication in the record that the reasons the appellant challenged these jurors for cause would prevent them from being fair and unbiased jurors. It is clear from the discussion of the appellant's challenges for cause that the trial judge properly denied these challenges for cause. There was no abuse of discretion here. Mahan.
 IX
The appellant contends the trial judge improperly denied his motion for a change of venue.
 "There are two situations in which a change of venue is mandated. The first is when the defendant can show that prejudicial pre-trial publicity 'has so saturated the community as to have a probable impact on the prospective jurors' and thus renders the trial setting 'inherently suspect'. [Citations omitted.] In this situation, a 'pattern of deep and bitter prejudice' must exist in the community. [Citation omitted.]
 "The second situation occurs when the defendant shows 'a connection between the publicity generated by the news articles, radio and television broadcasts and the existence of actual jury prejudice.' [Citation omitted.]"
Nelson v. State, 440 So.2d 1130, 1131-32 (Ala.Crim.App.),cert. denied, (Ala. 1983).
In support of his motion for change of venue, the appellant argued that a fair trial could not be had in Etowah County because: 1) there had been some newspaper and radio publicity concerning the accident; 2) the victims's families were well known in the community and; 3) some of the court personnel were members of the country club where one of the victims was employed.
The appellant did not introduce any newspaper articles or other examples of media coverage. Thus, the appellant has not shown that the media coverage of this case "saturated the community" with prejudicial publicity. Ex Parte Kennedy,472 So.2d 1106 (Ala. 1985). Furthermore, the appellant did not allege nor prove the existence of any actual juror prejudice. Thus, *Page 1123 
the trial judge properly denied the appellant's motion for change of venue.
 X
The appellant asserts that the state failed to prove venue in this case. When Dawn Wagnon was asked if the accident occurred in Etowah County, she replied in the affirmative. Thus, this issue is without merit. Porter v. State, 520 So.2d 235
(Ala.Crim.App. 1987), cert. denied, (Ala. 1988); Lofton v. State,515 So.2d 137 (Ala.Crim.App. 1987).
 XI
Officer Patton testified that he prepared the accident report in this case. Included in the accident report were two diagrams which illustrated the accident scene. When the state attempted to admit photostatic copies of these two diagrams into evidence, defense counsel objected on the grounds that "there's higher and better evidence to produce the original." (R. 987.) Patton stated that these diagrams were copies of the original diagrams from the accident report. He testified that the copies were the same as the originals and that no changes had been made on the copies. He testified that these copies of the originals were fair and accurate depictions of the accident scene. The trial judge then admitted these copies of the diagrams into evidence.
The appellant, citing the best evidence rule, contends on appeal that the state should have produced the actual diagrams from the accident report rather than the photostatic copies of the diagrams.
"The best evidence rule requires a party who wishes to prove the terms or contents of a writing to introduce the original into evidence if available." Howton v. State, 391 So.2d 147
(Ala.Crim.App. 1980) (citations omitted); Edwards v. State,505 So.2d 1297, 1299 (Ala.Crim.App. 1987). The best evidence rule is not applicable to the situation before us. Here, the state was not attempting to prove the contents of the diagrams. Officer Patton's testimony (concerning the location of the vehicles at the time of impact and immediately after the accident) was the evidence and the diagrams were merely demonstrative aids to help the jury in its understanding of the accident scene. See Crocker v. Lee, 261 Ala. 439, 74 So.2d 429
(1954). The diagrams were merely cumulative of Officer Patton's testimony.
The use of diagrams for the purpose of illustrating testimony is within the sound discretion of the trial judge. Stewart v.State, 443 So.2d 1362 (Ala.Crim.App. 1983), cert. denied, (Ala. 1984). We find no abuse of the trial judge's discretion by admitting into evidence copies of the diagrams which were a part of the accident report, particularly since Officer Patton testified that he prepared the diagrams in the accident report and stated that the copies were the same as the original diagrams in the accident report. It should be noted that while these copies of the diagrams from the accident report were admitted into evidence, the accident report itself was never admitted into evidence. There is no merit to this issue.
 XII
The appellant challenges the sufficiency of the evidence of both his manslaughter and his assault in the second degree convictions.
A person commits the crime of manslaughter if he recklessly causes the death of another person. Ala. Code, § 13A-6-3(a)(1) (1975).
 "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." Ala. Code, § 13A-2-2(3) (1975).
The evidence presented by the state showed that the appellant had been drinking prior to the accident and appeared intoxicated shortly after the accident occurred. *Page 1124 
Two witnesses saw the appellant's vehicle weaving right before the accident and there was ample evidence that the accident occurred while the appellant's vehicle was in the wrong lane of traffic. The appellant's conduct was certainly reckless and the state's evidence was clearly sufficient to support the appellant's conviction for manslaughter. See Klingel v. State,518 So.2d 853 (Ala.Crim.App. 1987), cert. denied, (Ala. 1988).
Count three of the indictment alleged that the appellant "did, with intent to cause physical injury to another person, cause physical injury to Julie Dawn Wagnon, by means of a deadly weapon or a dangerous instrument, to-wit: a motor vehicle, in violation of Title 13A, § 13A-6-21, Code of Alabama1975. (CR. 1.) (Emphasis added.) At the close of the state's evidence, the appellant moved for a judgment of acquittal on the basis that the state had failed to prove he acted with intent to cause physical injury to another. He raises this same ground on appeal.
The state contends in brief, citing Manning v. State,471 So.2d 1265 (Ala.Crim.App. 1985), that the state was not required to prove that the appellant intended to cause physical injury. This assertion is incorrect. In Manning, the defendant was convicted under subpart (3) of § 13A-6-21(a), Code of Alabama 1975, which provides that: "(a) A person commits the crime of assault in the second degree if: . . . (3) He recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument." InManning, we stated that "[a] reading of this subpart [3] reveals no provision requiring proof that the perpetrator intended to commit the assault, as is required by subparts (1)and (2) of § 13A-6-21(a)." (Emphasis added.) The indictment in the case at bar tracked the language of subpart (2) of §13A-6-21(a), and thus, the state was required to prove the appellant acted with the intent to cause physical injury. We find absolutely no evidence that the appellant specifically intended to cause physical injury on the day in question.
Thus, the state failed to meet its proper burden of proof and, therefore, the appellant's conviction for assault in the second degree must be reversed and rendered. The appellant's conviction for manslaughter is affirmed.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
All the Judges concur.