BOWEN, Presiding Judge.
The appellant, Harry Eldridge, was convicted of assault in the first degree for shooting his mother with a shotgun; of shooting into an occupied dwelling; and of five counts of assault in the second degree involving the shooting of his two brothers, his sister-in-law, his brother-in-law, and a neighbor. He was sentenced to a total of 80 years’ imprisonment. This is the direct appeal of those convictions.
I
Ex parte Jackson, 598 So.2d 895 (Ala.1992), provides newly appointed appellate counsel the opportunity to preserve certain issues in the trial court prior to appeal by:
“fil[ing] a motion with the [trial] court within 14 days after his appointment, requesting that the running of the time within which to file a motion for a new trial be suspended until such time as the reporter’s transcript is prepared and filed, then in that event, the 30-day period within which to file a motion for a new trial shall be computed from the date the reporter’s transcript is filed....”
Ex parte Jackson, 598 So.2d at 897.
In this case, the Ex parte Jackson procedure was not properly followed. The appellant was convicted and sentenced on August 31, 1993. C.R. 3. New counsel was appoint *1097 ed on September 8, 1993, to represent the appellant on appeal. On September 28,1993, more than 14 days after his appointment, appellate counsel filed a document entitled “motion for suspension of time[,] motion in arrest of judgment[,] motion for new trial[,] motion for judgment of acquittal.” C.R. 64-67. That motion included extremely general grounds in support of a motion for a new trial and requested that pursuant to Ex parte Jackson, “the time for the filing of the motion for a new trial in its entirety be suspended until such time as the reporter’s transcript is prepared and filed.” C.R. 66. That motion also included a request that the trial court “allow the Defendant’s post-trial counsel to amend this motion as needed.” C.R. 66.
Despite the fact that the Ex parte Jackson motion was not filed within 14 days of the appointment of new appellate counsel and was therefore untimely, the trial court granted the motion. On September 28, 1993, the trial judge ordered that
“any further post-trial proceedings be suspended until thirty days from the time that counsel for the Defendant be provided by the Circuit Court with a copy of the transcript of the trial proceeding. Said counsel for the Defendant shall be allowed, during the 30 days after receipt of the transcript in this cause, to file any and all post-trial motions and said post-trial motions, if filed within 30 days of the receipt of the transcript by the Defendant’s attorney, shall be considered to have been timely filed.” C.R. 68 (emphasis added).
This order does not conform to Ex parte Jackson, which clearly requires that the motion for a new trial be filed within 30 days “from the date the reporter's transcript is filed." Ex parte Jackson, 598 So.2d at 897 (emphasis added).
The reporter’s transcript was filed with the circuit clerk on October 21, 1993.[1] R. 328. Therefore, the time for filing a motion for a new trial pursuant to Ex parte Jackson expired on November 20, 1993. Because November 20 was a Saturday, the time for filing the motion was extended to Monday, November 22. See Rule 1.3(a), A.R.Crim.P.
The case action summary sheet does not reflect when the appellant’s amended motion for a new trial was filed in the circuit court. However, the certificate of service on the motion recites that it was served on December 7, 1993, and it is clear that the motion was not filed within 30 days from the filing of the court reporter’s transcript, as required by Ex parte Jackson. The appellant’s amended motion for a new trial was therefore untimely filed.
Appellate counsel claims that he did not receive the transcript until November 10, 1993, and that, under the circuit court’s order, the amended motion for a new trial was timely filed. As this Court noted in an order dated December 8, 1993: “It appears that [appellate] counsel is of the impression that the 30-day time period to file a motion for new trial pursuant to the procedure set out in Ex parte Jackson, 598 So.2d 895 (Ala.1992), runs from his receipt of the transcript. The procedure in Ex parte Jackson requires that the motion be filed within 30 days from the date the transcript is filed.” A circuit court has no authority to amend the procedures or expand the time limitations set out in Ex parte Jackson for the filing of a motion for a new trial.
In this particular case, the untimely filing of the amended motion for a new trial is of no consequence because each of the issues raised in this appeal was preserved by timely and adequate objection at trial. However, this case clearly demonstrates the need for compliance with the time requirements of Ex parte Jackson.
II
The appellant contends that the trial judge had no authority to order him to undergo a second mental evaluation prior to trial.
Dr. Kathy Ronan, a clinical psychologist for the Taylor Hardin Secure Medical Facility, originally examined the appellant. She *1098 filed three reports with the trial court. Although none of those reports is contained in the record before this Court, we can glean the content of those reports from Dr. Ro-nan’s testimony at trial as a witness for the defense.
Her first report was filed December 12, 1991, and was described as tentative due to her lack of “outside information.” R. 218. Dr. Ronan concluded that the appellant “may have had some symptoms of a mental illness and he was also intoxicated surrounding the time of the event. That his ability to understand right from wrong or to control himself was somewhat impaired.” R. 218.
Her report dated February 5, 1992, was a “follow-up addendum” to her first report (R. 253), and was based on additional information, including prior commitment treatment records, which included a diagnosis of paranoid schizophrenia. R. 220-21, 223. At trial she testified that she “believe[d the appellant] had a combination of psychiatric symptoms and acute alcohol intoxication. That combination did impair his ability to control his behavior and to fully appreciate what he was doing or understanding right from wrong during that time period.” R. 232.
Dr. Ronan filed a third report on April 23, 1992, evaluating the appellant in connection with an unrelated charge of possession of marijuana that occurred on December 8, 1990 — before the commission of the present offenses, which occurred on January 21,1991. In that report she concluded that the appellant “probably had some mild symptoms of his mental illness, but they weren’t substantial enough to impair his understanding of right and wrong. They did not contribute to any action that took place during that time period.” R. 234. Dr. Ronan admitted that this report was “contrary to [her] findings on the shooting cases.” R. 234.
After receiving the conflicting reports from Dr. Ronan, the trial judge ordered an independent psychological evaluation to be performed on the appellant by Dr. David Hodo, a psychiatrist. The trial judge gave the following reason for granting the State’s motion for an independent mental examination of the appellant:
“The independent examination by Dr. Hodo, a psychiatrist, would be a benefit to this court and to the administration of justice, especially in view of the conflicting opinions regarding this defendant’s mental condition at various times and events, and the serious nature of the charge[s] herein.” C.R. 38.
Rule 11.3, A.R.Crim.P., governs the appointment of experts and provides, in pertinent part:
“(a) Grounds for Appointment. If the circuit court determines that reasonable grounds for an examination exist, it shall appoint a psychiatrist or psychologist to examine the defendant and to testify regarding the defendant’s mental condition, or shall order that such examination be conducted by a psychiatrist or psychologist employed and appointed by the Commissioner of the Department of Mental Health and Mental Retardation.
[[Image here]]
“(e) Additional Expert Assistance. The circuit court may, in its discretion, appoint additional qualified mental health professionals and may order the defendant to submit to physical, neurological, or psychological examinations, when advised by an appointed professional or by the Department of Mental Health and Mental Retardation that such examinations are necessary for an adequate determination of the defendant’s mental condition.”
The appellant argues that, under Rule 11.3(c), a trial court may order an additional mental evaluation only if an appointed expert or the Department of Mental Health and Mental Retardation advises the trial court that an additional evaluation or other testing is “necessary for an adequate determination of the defendant’s mental condition.” While the actual wording of Rule 11.3(c) may lend itself to such an interpretation, it is clear from the Committee Comments that the drafters of Rule 11.3(c) did not intend to so restrict the application of the rule:
“In some circumstances, either the psychiatrist or the psychologist or the circuit court may desire the assistance of other professionals to carry out physical, neurological, or psychological tests. This section *1099 [11.3(c) ] authorizes the court to appoint additional mental health professional and to order the defendant to undergo further examinations and tests.” (Emphasis added.)
We need not, however, resolve the apparent conflict between the language of the rule and the Committee Comments in this case. We are of the opinion that the conflicting reports submitted by Dr. Ronan were sufficient to “advise” the trial court that further examination of the appellant was necessary for an adequate determination of his mental condition.
In connection with this issue, we hold that even if the trial judge improperly ordered the second mental examination, Dr. Hodo was properly allowed to testify as a witness for the State to rebut the testimony offered by Dr. Ronan, who testified as a witness for the appellant. The appellant first introduced evidence concerning Dr. Hodo’s report. On direct examination by defense counsel, Dr. Ronan testified that she had discussed the appellant’s case with Dr. Hodo:
“To my best recollection, Dr. Hodo was of the opinion that [the appellant] probably did understand right from wrong during that time period. The way he described it, we both admitted it was a difficult case to determine. There were a lot of issues and factors to be considered, and that my opinion about Mr. Eldridge in general, just my general clinical opinion was similar to his. However to this ultimate issue as to how impaired he was, I was coming down saying that he was a little more impaired whereas Dr. Hodo was saying that he wasn’t as impaired.” R. 233.
“ ‘Testimony which may be apparently illegal upon admission may be rendered prejudi-cially innocuous by subsequent or prior lawful testimony to the same effect or from which the same facts can be inferred.’ ” Spurgeon v. State, 560 So.2d 1116, 1121 (Ala.Cr.App.1989) (quoting Thompson v. State, 527 So.2d 777, 780 (Ala.Cr.App.1988) (citations omitted)).
Ill
We agree with the trial judge’s finding that the appellant failed to make a prima facie showing of racial discrimination in the selection of the jury, R. 55, and we find no violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The appellant argues that it is per se racial discrimination for the State to use more than 50% of its strikes to remove black venire-members. The venire from which the appellant’s jury was struck consisted of 18 blacks (55%) and 15 whites (45%). The State used five of nine strikes (56%) to remove blacks. The defense used six of nine strikes (67%) to remove blacks. Six blacks and six whites served on the jury.[2]
“Batson, Ex parte Branch, 526 So.2d 609 (Ala.1987), and their progeny make it very clear that 1 “[t]he burden of persuasion is initially on the party alleging discriminatory use of peremptory challenges to establish a prima facie case of discrimination.” ’ Ex parte Bird, 594 So.2d 676, 679 (Ala. 1991) (quoting Ex parte Branch, 526 So.2d at 622). Until this burden is met, the challenged party ‘is under no obligation to offer explanations for its peremptory strikes.’ Jackson v. State, 594 So.2d 1289, 1292 (Ala.Cr.App.1991). See also Huntley v. State, 627 So.2d 1013 (Ala.1992). Merely showing that the challenged party struck one or more members of a particular race is not sufficient to establish a prima facie case. Harrell v. State, 571 So.2d 1270, 1271 (Ala.1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991); Ashley v. State, 606 So.2d 187, 192 (Ala.Cr.App.1992); Jones v. State, 603 So.2d 419, 420-21 (Ala.Cr.App.1992).”
Edwards v. State, 628 So.2d 1021, 1024 (Ala. Cr.App.1993).
“As [the Alabama Supreme Court] explained in Harrell [v. State, 555 So.2d 263 (Ala.1989) ], a defendant cannot prove a prima facie case of discrimination solely from the fact that the prosecutor struck one or more blacks from his jury. A defendant must offer some evidence in addition to the striking of blacks that would *1100 raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created. Logically, if statistical evidence may be used to establish a prima facie case of discrimination by showing a discriminatory impact, Harrell, 555 So.2d at 267, citing United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986), then it should also be available to show the absence of a discriminatory purpose.”
Harrell v. State, 571 So.2d 1270, 1271-72 (Ala.1990) (emphasis in original).
IV
The appellant has raised five related issues: Whether the State proved sufficient physical injury to each of the victims to sustain his five convictions for assault in the second degree.
The indictment upon which the appellant was tried charged the appellant with four counts of assault in the second degree and with two counts of assault in the first degree.[3] The counts charging second degree assault alleged that the appellant “with intent to cause physical injury to another person, eause[d] physical injury ... by means of a deadly weapon or dangerous instrument, to-wit: a shotgun” to Archie Eldridge, Maggie Eldridge, Napoleon Eldridge, and Chester Williams. The counts charging first degree assault alleged that the appellant “with intent to cause serious physical injury to another person, cause[d] serious physical injury ... by means of a deadly weapon or dangerous instrument, to-wit: a shotgun” to Jerry Jackson and Sadie Eldridge.
At the conclusion of the State’s case, the trial judge granted the appellant’s motion for a directed verdict to the extent that he found that the State had not presented a prima facie case of serious physical injury to Jerry Jackson. However, the trial judge found that the State had “proved the lesser included offense of assault in the second degree” with regard to Jackson. R. 210. Accordingly, the trial court instructed the jury on assault in the second degree with regard to Archie Eldridge, Maggie Eldridge, Napoleon Eldridge, Chester Williams, and Jerry Jackson and instructed the jury on assault in the first degree only with regard to Sadie El-dridge. R. 288-89, 292-93, 294. See also R. 303-06. The jury deliberated 11 minutes and returned verdicts finding the appellant guilty of all of the assault charges.
The appellant was charged with the form of second degree assault defined in Ala.Code 1975, § 13A-6-21(a)(2): “With intent to cause physical injury to another person, he causes physical injury to any person by means of a deadly weapon or a dangerous instrument.” The evidence shows that the appellant shot each of the named victims with a .12 gauge pump shotgun. Under § 13A-6-21(a)(2), “the prosecution need only prove that the victim suffered ‘physical injury’ where a deadly weapon is used to accomplish the attack.” Jackson v. State, 566 So.2d 752, 755 (Ala.Cr.App.1987), cert. denied, 566 So.2d 757 (Ala.1988). “Physical injury” is defined as “[ijmpairment of physical condition or substantial pain.” Ala.Code 1975, § 13A-l-2(8).
Archie Eldridge, the appellant’s brother, testified that the appellant shot him with a .12 gauge shotgun. He stated that one shotgun pellet went through his hand, and one pellet hit him in one leg and one in his other leg. R. 181-82.
Maggie Eldridge, Archie’s wife, testified that the appellant fired his shotgun at her mobile home, that “some of the ... shot hit [her] in the elbow and in the neck,” and that shot also struck her “[i]n the head.” R. 130, 132. She testified that since that time and as a result of those injuries, her head, neck, hands, and feet “get numb,” her eyes “give [her] trouble since then,” her “nose bleeds all the time,” and she has “headaches all the time.” R. 132.
Napoleon Eldridge, the appellant’s brother, testified that the appellant shot him in his *1101 “mouth, ear, and chest area.” R. 163. He “couldn’t really say right now” whether he had “any problems as a result of that gunshot wound.” R. 164.
Chester Williams, the appellant’s brother-in-law, testified that he was shot by the appellant in his shoulder, back, and head. R. 108-09.
Jerry Jackson, an 84-year-old friend of the appellant’s mother, testified that the appellant shot him in his back and his legs, and that since then he has had “pain” in his legs: “Hurts me all the time.” R. 156. There was also testimony that, immediately after the shooting, “[t]he calf of [Jackson’s] leg was like hanging off, shot off.” R. 83.
Although this Court has held that “a bullet wound itself is not a ‘serious physical injury,”’ M.T.R. v. State, 620 So.2d 753, 755 (Ala.Cr.App.1993) (quoting Vo v. State, 612 So.2d 1323, 1325 (Ala.Cr.App.1992)), we find that the shotgun pellet wounds in this case were sufficient evidence of “physical injury” to support the jury’s verdicts finding the appellant guilty of assault in the second degree. See Page v. State, 622 So.2d 441, 446-47 (Ala.Cr.App.1993).
V
The appellant argues that the evidence is insufficient to support his convictions. The appellant argues that “[t]he evidence introduced at trial was purely circumstantial.” Appellant’s brief at 40. However, the evidence shows that there was eyewitness testimony to each of the shootings.
In addition to the charges of assault in the second degree discussed above, the appellant was also convicted of assault in the first degree for shooting his mother, Sadie Eldridge. Mrs. Eldridge testified that the appellant shot her in the stomach with a shotgun. There was testimony that her “intestines protruded out, they were hanging out and she was bleeding profusely.” R. 82. She was in the hospital for eight months and then had to live with her daughter for eight months so that her daughter could care for her. Mrs. Eldridge testified that she still suffers problems with her bowels and that she must wear diapers at times. She said she also has “a sack of medicine” to take. R. 64. This evidence was sufficient to support the appellant’s conviction for assault in the first degree.
The evidence was also sufficient to support the appellant’s conviction for shooting into an occupied dwelling, in violation of Ala.Code 1975, § 13A-11-61. Maggie El-dridge testified that while she and her son were inside their mobile home, the appellant repeatedly shot into the mobile home with a shotgun while he was standing approximately 20 to 25 feet from the mobile home. She testified that she was struck by some of the shots and that some of the shots passed all the way through the mobile home.
The appellant also maintains that the State failed to prove the requisite intent in view of the evidence he produced regarding his insanity. However, the evidence of the appellant’s mental disease or defect was not so clear, convincing, or undisputed as to compel a verdict in his favor. See Ellis v. State, 570 So.2d 744, 749-57 (Ala.Cr.App.1990).
The appellant received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. An order from the Court of Criminal Appeals dated December 8, 1993, notes that the reporter's transcript was filed on August 17, 1993 and the time for filing a motion for new trial expired on November 17, 1993. The reason for this discrepancy is unknown.

. A black alternate was later dismissed.

. An earlier indictment had charged the appellant with assault in the first degree with regard to all of the victims.